BRUCE McBRIDE, Plaintiff-Appellant, *v.* THE COMMERCIAL BANK OF CHAMPAIGN, Defendant-Appellee.

Fourth District    No. 17162

Opinion filed November 19, 1981.

Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign (D. Cameron Dobbins, of counsel), for appellant.

Bush, Harrington & Porter, of Champaign (Thomas E. Harrington, of counsel), for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:
A bank as escrow agent.

- --Can it relinquish documents in escrow solely upon the demand of one party to the agreement?

No—if it does, it is at its own peril.

In 1973, plaintiff Bruce McBride and his wife Ruth Ann contracted to buy a parcel of real estate in Grand Traverse County, Michigan, from F. R. Inskip and Ruth F. Inskip, Ruth Ann's parents. In connection with this purchase, the McBrides gave the Inskips 12 promissory notes for $12,000 each, payable each January 10 from 1974 through 1985, plus a $9,000 note due January 10, 1986.

The contract between the McBrides and the Inskips provided that defendant Commercial Bank of Champaign (Bank) should "act as escrow agent for the Buyers and Sellers during the existence of this agreement." In addition to requiring the buyers to pay the $5 escrow fee, the contract provided:

> "The Warranty Deed provided for, the original of this agreement, the insurance policy, and the Abstract of Title shall, as soon as practicable, be deposited with the escrow agent to be held by it until this agreement is fully performed by the Buyers, or otherwise terminated."

The Inskips' attorney delivered these documents to the Bank and in an accompanying letter indicated that the parties anticipated that the Inskips would cancel a $12,000 note each January.

Plaintiff filed a complaint against the Bank, alleging that he had performed all acts required of him in the contract and had notified the Bank of his full performance by letter on April 24, 1979. In this letter, plaintiff demanded delivery of the warranty deed that the Bank held as escrow agent. The complaint further alleges that on May 4, 1979, the Bank had marked the deed "Cancelled" and returned it to the Inskips' agent. The complaint alleges that the Bank thus breached its fiduciary duty to plaintiff, causing him to lose an undivided one-half interest in the real estate and possession of the real estate.

After filing its answer to the complaint, the Bank moved for summary judgment. In support of its motion, it filed an affidavit of J. Michael O'Byrne and also incorporated by reference an affidavit by O'Byrne which had been filed earlier with a motion to dismiss. In the earlier affidavit, O'Byrne stated that he was the Inskips' attorney in the sale of the real estate to plaintiff. He personally delivered the original of the contract, the warranty deed, the promissory notes, and the initial escrow fee to the Bank. On March 30, 1979, he sent to plaintiff a "Notice of Default," which was attached to the affidavit as an exhibit. That notice states that plaintiff had failed to pay five $12,000 notes due in 1975 through 1979 and had failed to pay interest on six other notes. The notice advised plaintiff that unless payment of the $60,000 and interest was made, the contract

would be "declared forfeited" and the documents held in escrow would be "cancelled" and his interest in the property "terminated." "[T]he aforesaid payments shall be payable in full on or before the 10th day of May, 1979."

O'Byrne's first affidavit further stated that the Inskips had received no payments curing the default and that on May 2, 1979, O'Byrne had notified the Bank of plaintiff's failure to make payment and provided it with a copy of the notice of default. On May 2, O'Byrne told the Bank that the contract had been terminated because of plaintiff's default and asked that the deed be cancelled and, along with the notes, returned to O'Byrne. The Bank complied with that request.

In his second affidavit, which was filed along with the motion for summary judgment, O'Byrne stated that a lawsuit was then in progress in Grand Traverse County, Michigan—with the Inskips as plaintiffs and the McBrides as defendants—to quiet title to the real estate involved in the contract.

Also used as support for the motion for summary judgment was a previously filed motion for dismissal of the complaint, signed by the Bank's president, Richard M. Jorgenson. That motion stated that (1) plaintiff had not been deprived of any interest in the real estate by the Bank's return of the deed to the Inskips, (2) the Bank was not required by the contract to deliver the deed to plaintiff, (3) plaintiff's mere delivery of the promissory notes to the Inskips was not payment in performance of the contract, and (4) the Inskips had terminated the contract and, based on that termination, the Bank had cancelled the deed and returned it to the Inskips' attorney.

Plaintiff filed a motion to strike O'Byrne's and Jorgenson's affidavits for failure to comply with Supreme Court Rule 191(a) (73 Ill. 2d R. 191(a)). The record contains no ruling by the trial court on plaintiff's motion to strike. The court granted the Bank's motion for summary judgment.

■■ Plaintiff's initial contention on appeal is that the affidavits of O'Byrne and Jorgenson failed to conform to Rule 191(a), which requires that affidavits in support of a motion for summary judgment be made "on the personal knowledge of the affiants" and "not consist of conclusions but of facts admissible in evidence * * *." However, we are unable to address the merits of plaintiff's contention because he has failed to preserve the issue for appeal. When a party moves to strike an affidavit which has been filed in support of a motion for summary judgment, it is that party's duty to bring his motion to the attention of the trial court and to get a ruling on the motion. His failure to do so waives his objections to the affidavit. *Oak Trust & Savings Bank v. Annerino* (1978), 64 Ill. App. 3d 1030, 381 N.E.2d 1389; *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 302 N.E.2d 382.

■■ Plaintiff next contends that the trial court erred in entering summary judgment in favor of the Bank. A movant is entitled to summary judgment when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57(3).) When the moving party has filed affidavits in support of his motion, the opposing party cannot rely on his pleadings to counter the factual assertions made in the affidavits and raise issues of material fact. (*Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 313 N.E.2d 457; *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 355 N.E.2d 70.) Under such circumstances, the assertions contained in the affidavits must be taken as true. *Carruthers*; *Bezin v. Ginsburg* (1978), 59 Ill. App. 3d 429, 375 N.E.2d 468.

■■ Plaintiff's failure to file counteraffidavits, however, did not automatically entitle the Bank to summary judgment. Rather, the documents filed by the moving party must show that his right to summary judgment is clear and free from doubt. (*Indiana Harbor Belt R.R. Co. v. Budd Co.* (1980), 87 Ill. App. 3d 91, 408 N.E.2d 944; *Yakupcin v. Baker* (1980), 83 Ill. App. 3d 624, 404 N.E.2d 869.) This the Bank has failed to do.

■■ In examining the documents which the trial court had before it when ruling on the motion for summary judgment, we find that the Bank should have known, through the information in its possession, that the Inskips notified plaintiff that he was in default on the contract and that his interest in the property would be "forfeited" if he did not make payment by May 10, 1979. By giving that deadline, the Inskips waived any right to a forfeiture before May 10. (*Kelly v. Germania Savings & Loan Association* (1963), 28 Ill. 2d 591, 192 N.E.2d 813.) But on May 4—six days before the deadline which the Inskips had set for plaintiff to cure his default—the Bank delivered to the Inskips all items held in escrow. Thus, it is not at all clear that the contract had been "terminated" at the time that the Bank gave up the documents held in escrow, and it cannot be said that, as a matter of law, the Bank breached no duty to the plaintiff in making delivery to the Inskips.

In ruling in favor of the Bank on its motion for summary judgment, the trial court observed that the escrow agreement made no provision as to whom the Bank was to make delivery. The contract merely provided that the Bank was to hold the documents "until this agreement is fully performed by the Buyers, or otherwise terminated." The trial court noted that McBride had informed the Bank that the contract was performed and that the Inskips had informed the Bank that the contract was terminated. Under these circumstances, said the trial court, the contract was either fully performed or it was terminated, and the Bank, having no instruc-

tions, could deliver the documents to the party of its choice. We totally reject this reasoning.

■■ Where, as here, an escrow provision is ambiguous because of a material omission, it is the duty of the trial court to construe the escrow. Its construction will be upheld unless it is against the manifest weight of the evidence. (*Estate of Reinhold v. Mansfield* (1980), 90 Ill. App. 3d 224, 412 N.E.2d 1146.) The trial court's construction of this agreement, however, would render it entirely meaningless as a device for protecting plaintiff's interests under the contract. Under the trial court's analysis, the Bank would not breach a duty to plaintiff by delivering the documents to the Inskips even if both parties had informed the Bank that plaintiff had performed the contract in full. The only reasonable inference arising from the escrow provision is that the Bank was to make delivery to plaintiff if he performs the contract and to the Inskips if the contract is "terminated" for some other reason. Thus, since the evidence before the trial court revealed that the contract may not have been "terminated" at the time delivery was made to the Inskips, the Bank has not shown that it had a clear right to summary judgment.

■■ When the Bank agreed to be the escrowee for the Inskips and the McBrides, it assumed a fiduciary duty to each of them. (*Toro Petroleum Corp. v. Newell* (1974), 33 Ill. App. 3d 223, 338 N.E.2d 491.) As such, it was an agent for each party (*Ortman v. Kane* (1945), 389 Ill. 613, 60 N.E.2d 93), and as agent it was bound to follow the instructions of its principals. (*Toro Petroleum Corp.*) The trial court and the Bank have made much of the fact that the contract itself gives the Bank no instructions concerning the party to whom to make delivery. That omission, however, does not lessen the Bank's duty to follow instructions that *are* given. The controlling factor is that, at the time the Bank delivered the documents to the Inskips, it had also received a demand from plaintiff to deliver them to him. As agent of both parties, the Bank was bound to follow the instructions of both parties.

■■ The fact that it was faced with conflicting instructions and demands did not give the Bank the right to favor one party over the other, but rather placed the Bank upon notice that in obeying the instructions of one and disregarding those of the other, it acted at its peril. (*Franks v. North Shore Farms, Inc.* (1969), 115 Ill. App. 2d 57, 253 N.E.2d 45; *Nathan v. Rehkopf* (1895), 57 Ill. App. 212; *Davisson v. Citizens' National Bank* (1910), 15 N. M. 680, 113 P. 598, *aff'd* (1913), 229 U.S. 212, 57 L. Ed. 153, 33 S. Ct. 625.) An escrowee which is willing to ignore the instructions of one of its principals in order to comply with the instructions of the other cannot escape being held accountable for its actions. Faced with this dilemma, the Bank's only prudent course of action would have been to

file an action interpleading the Inskips and the McBrides and deposit the documents with the court. (*Franks.*) (We express no opinion concerning an escrowee's duty where subsequent instructions from one or more of its principals contradict, rather than supplement, an original escrow agreement.)

The Bank argues that even if it breached a duty to plaintiff, there is no possible way that the plaintiff has been injured, and the trial court therefore properly granted the motion for summary judgment. The Bank points out that wrongful delivery of a deed held in escrow does not convey title. (*Tucker v. Kanatzar* (1940), 373 Ill. 162, 25 N.E.2d 823.) The Bank's position is that even if it had retained the deed or had delivered it to the plaintiff, the quiet-title action now being prosecuted in Michigan would still have taken place. It is there, says the Bank, that title to the land will be decided.

The Bank is operating under the assumption that the Michigan case will determine that the contract has either been terminated or performed. Given the fact that the Bank terminated the escrow prior to the date the Inskips had given plaintiff for curing his default, it is possible that the Michigan courts will decide that the contract has been neither performed nor properly terminated. With that result, perhaps plaintiff would be able to prove some damage that was a proximate result of the Bank's breach of duty. Furthermore, perhaps plaintiff will be able to prove that the quiet-title action in Michigan would never have been instituted if the Bank had not breached its duty to plaintiff. At this stage of the proceedings, we cannot say as a matter of law that plaintiff was not damaged by the Bank's breach of its fiduciary duty to him. See *Buhler v. Marrujo* (N.M. App. 1974), 86 N.M. 399, 524 P.2d 1015.

The Bank having failed to show that its right to summary judgment is clear and free from doubt, we reverse the trial court's order entering summary judgment in defendant's favor and remand this case to the trial court for further proceedings.

Reversed and remanded.

WEBBER and LONDRIGAN, JJ., concur.