McDONALD'S CORPORATION, Plaintiff-Appellee and Cross-Appellant, v. BUTLER COMPANY *et al.*, Defendants-Appellants and Cross-Appellees.

Second District   No. 2—86—0509

Opinion filed July 29, 1987.

David W. Andich, of Andich & Belgrade, and William R. Warnock, of Siegel & Warnock, both of Chicago (Jack M. Siegel, of counsel), for appellants.

Joann Tansey Angarola, Jeffrey M. Cross, Barbara Baran, and Jeffrey W. Kane, all of Ross & Hardies, of Chicago (Richard F. Babcock, of counsel), for appellee.

JUSTICE INGLIS delivered the opinion of the court:

This action was brought by plaintiff, McDonald's Corporation (McDonald's), for declaratory judgment, injunction, specific performance, and reformation of contract against defendants, Butler Company and Jorie Butler Kent, Michael Butler, and Frank O. Butler II, as administrators of the estate of Paul Butler, deceased, in their capacities as successors in interest to the Butler Company. The trial court held for plaintiff and against defendants. We affirm.

McDonald's and Butler Company (Butler) entered into an agreement for the sale and exchange of real property dated July 10, 1980 (July 10 agreement). Under the July 10 agreement, Butler agreed to

sell to McDonald's certain real property in the village of Oak Brook upon which McDonald's planned to develop its headquarters. In consideration for the property, McDonald's agreed to pay cash and to convey other real property to Butler. One of the parcels McDonald's conveyed to Butler was a 14-acre field known as Autumn Oaks. The July 10 agreement further provides that McDonald's will be entitled to repurchase Autumn Oaks:

> "[i]f within five (5) years after the closing *** [Butler] *** shall not have commenced the development of a substantial improvement.
>
> * * *
>
> '[C]ommencement of development of substantial improvements' shall be conclusively deemed to have occurred upon the execution of a contract for the construction of such improvements and the commencement of grading and excavation for foundations; but only if seller shall thereafter diligently prosecute the erection of the foundation of a building on the premises, subject only to excusable delay due to acts of God or matters beyond seller's reasonable control."

The agreement further provides that Autumn Oaks is to be used and developed only as permitted under the present residential zoning classification or such other use as may be permitted by the village of Oak Brook. Further, the agreement prohibits Butler from developing Autumn Oaks in a manner which unreasonably interferes with future development of McDonald's adjoining premises. The agreement also states that McDonald's desires to establish a general plan for the orderly development of Autumn Oaks. Accordingly, McDonald's restricts Autumn Oaks to the following terms and conditions:

> "1. No *** [improvements] shall be commenced, *** upon the Autumn Oaks Premises, until the final exterior plans and specifications therefore shall have been submitted to and approved by [McDonald's] in writing with respect to harmony of design, materials, location and relation to surrounding land uses, structures, improvements, topography and landscaping."

McDonald's failure to reasonably disapprove preliminary or final plans within 30 days following their submission constitutes approval of the plans submitted, but any revisions of such plans are to be submitted to McDonald's for further approval. Notice of disapproval is to be in writing and include reasons for the disapproval along with suggestions as to how the plans might be revised in order to gain approval.

On July 11, 1980, McDonald's and Butler closed on their sales agreement, at which time the two parties exchanged letters. One of

the letters, from McDonald's to Butler, gave Butler an easement over McDonald's property. The other letter, by Paul Butler, president of Butler, agreed that Butler would limit development of Autumn Oaks to a "village retail center." That letter stated:

"This will confirm our agreement, made to induce you to enter into our July 10, 1980, Real Estate Agreement, that we plan to develop the captioned premises as a village retail center. We also agreed that we will not develop them for a different use, even if permitted by the Village of Oak Brook, unless you have not exercised your option to purchase, within the thirty day period provided in the agreement, after the expiration of five years, after the closing without having commenced development of substantial improvements."

In November 1984, Butler sent to McDonald's development plans for Autumn Oaks. McDonald's responded, advising Butler that the proposal, in terms of the uses to be made and general layout, was in keeping with the intent of the parties to the contract and amendment thereto.

In a letter dated March 13, 1985, Butler informed McDonald's of revised plans for Autumn Oaks, which included its intention to move a house (Natoma) onto the property. The letter stated, in pertinent part:

"The revision to the preliminary concept plan and the final concept plan for Phase I relate to the intention of Butler Company to move the Natoma residence from the headquarters property to the subject property. For the foreseeable future, the Natoma residence will continue to be utilized and occupied as a single-family residence consistent with the present zoning of the subject property. In the future, Natoma may become a historical museum reflecting the origins, growth and development of the Village of Oak Brook and the role played by leading developers, such as Paul Butler. Whether such a historical museum is a part of the village retail center, or part of some other type of commercial development remains to be seen. Factors such as zoning and economic feasibility will have to be addressed. In the meantime, however, Natoma will be used for single-family residential purposes."

This letter was accompanied by blueprints which further depicted the plan. One such blueprint depicts an "L" shaped development for commercial space and also depicts the placement of Natoma marked as a future museum in a triangular island. Along with the letter were also included pictures of Natoma with all side elevations, and various blue-

prints of Natoma. No extensive plans were submitted with the March 13 letter in regard to development of the commercial space.

McDonald's responded to Butler's letter of March 13 in a letter dated April 9, 1985, stating that the documents submitted were not sufficiently complete to permit McDonald's to review them as a preliminary submission in accordance with the July 10 agreement and the covenants attached to the warranty deed of July 11, 1980. The letter additionally stated:

> "[R]esidential use of the Autumn Oaks property would violate the previous agreement of McDonald's and Butler Company that the property would be used only for a Village retail shopping center. McDonald's corporation regards retail business as the only business permitted under the agreements between Butler Company and McDonald's corporation and one of only a few uses of Autumn Oaks that would be in harmony with the surroundings and compatible with the plans of McDonald's for the development of the twenty abutting acres which it still owns. The plan that you have presented for a small shopping center on the Autumn Oaks property is too generalized for us to form a judgment with respect to whether it would meet with our approval. Moreover, it is by no means certain the Village of Oak Brook would approve the proposed shopping facility in its present form or at all."

On April 11, 1985, Butler's attorney responded to McDonald's letter of April 9, stating that Butler intended to proceed with the movement of Natoma to Autumn Oaks because McDonald's objections were "unreasonable and/or unfounded."

On April 19, 1985, McDonald's commenced this action. Butler proceeded to move Natoma to Autumn Oaks. On April 22, 1985, contractors dug a single foundation for Natoma, and in May 1985, Natoma was set on its foundation. After relocating Natoma to Autumn Oaks, work continued on the site while this matter was pending.

On July 15, 1985, McDonald's exercised its option to repurchase Autumn Oaks, and on July 18, 1985, Butler informed McDonald's that, in its opinion, McDonald's option had been extinguished.

On March 20, 1986, McDonald's filed its third amended complaint. McDonald's sought a declaratory judgment that it had a contractual right to repurchase Autumn Oaks. McDonald's also requested a mandatory injunction compelling defendants to remove Natoma from Autumn Oaks. McDonald's also sought specific performance for the reconveyance of Autumn Oaks and further sought reformation of the July 10 agreement.

Defendants filed a counterclaim for declaratory judgment seeking a declaration that the July 10 agreement constituted the entire and sole contract between the parties and that Butler was contractually entitled to develop Autumn Oaks parcel with Natoma as permitted under the residential zoning classification of the village of Oak Brook. Prior to trial, on the motion of defendants, the trial court dismissed McDonald's reformation counts.

A bench trial was held in April 1986. Prior to trial, a motion *in limine* was filed by defendants to exclude the July 11 letter. This motion was granted.

At trial, McDonald's called, among other witnesses, Richard Geyser, an expert witness who was not disclosed to defendants until the day before he testified, and David Gooder, who was Butler's former attorney.

At the conclusion of the trial, the court entered its judgment order finding in favor of McDonald's and against defendants on the complaint and the counterclaim. Defendants were ordered to remove any improvements placed on Autumn Oaks and to specifically perform the terms and conditions of the contract requiring reconveyance of Autumn Oaks to McDonald's. Despite the court's earlier ruling on the July 11 letter, the court did refer to the July 11 letter in announcing its ruling. In announcing its decision, the trial court also made a statement that it was aware of Paul Butler's reputation, a matter which was not in evidence.

It is from the final judgment order of May 12, 1986, that this appeal is taken. We affirm.

■ Defendants first contend that Butler commenced development of substantial improvements such that any right of McDonald's to repurchase the property was extinguished. McDonald's responds that defendants did not begin substantial improvements on Autumn Oaks and that McDonald's, therefore, had a right to repurchase Autumn Oaks. We agree with McDonald's.

A determination of the rights of the parties in this case depends on the contract that was entered into by Butler and McDonald's. Because construction of a contract presents an issue of law, in the absence of any material questions of fact, a reviewing court may independently construe the contract. *Ancraft Products Co. v. Universal Oil Products Co.* (1981), 100 Ill. App. 3d 694, 697.

In order to understand the agreement which McDonald's and Butler entered into, it is appropriate to begin by determining the relation of the July 11 letter to the July 10 agreement.

■■ Defendants go on at length to contend that the parol evi-

dence rule bars consideration of the July 11 letter. However, defendants' contention is misplaced. The parol evidence rule bars prior or contemporaneous oral statements from being admitted into evidence (*20 East Cedar Condominium Association v. Luster* (1976), 39 Ill. App. 3d 532, 535) and also excludes the admission of prior written statements. (4 Williston, Contracts sec. 631, at 953 (3d ed. 1961).) The parol evidence rule does not bar contemporaneous written documents from being admitted. (See, *e.g., Burgener v. Gain* (1981), 101 Ill. App. 3d 699, 702; *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63.) Furthermore, where different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument. *Pecora v. Szabo* (1981), 94 Ill. App. 3d 57, 63.

In the present case, the July 11 letter was delivered during the closing on July 11, 1980. Moreover, the July 11 letter refers to the sale, concerns the same subject (Autumn Oaks), and limits the use to which Butler can make of Autumn Oaks. Thus, it must be concluded that the two instruments are to be construed together to form one contract. (See 94 Ill. App. 3d 57, 63.) Therefore, the trial court erred in granting defendants' motion *in limine* to exclude the July 11 letter.

Even were this court not to consider the July 11 letter as a contemporaneous instrument to be considered as part of the same transaction, we would conclude that the July 11 letter was a modification of the contract supported by consideration of the letter from McDonald's to Butler granting Butler an easement on McDonald's property.

Having determined that the two instruments are to be construed together, the question then becomes how they should be interpreted. Conflicting provisions of a contract will be reconciled if possible so as to give effect to all of the contract's provisions. (*Benedetti & Sons, Inc. v. O'Malley* (1984), 124 Ill. App. 3d 500, 506.) Where one intention is expressed in one clause of an instrument and a different, conflicting intention appears in another clause of the same instrument, full effect should be given to the clause which is the more principal and specific, and the general clause should be subjected to such modification or qualification as the specific clause makes necessary. *Heifner v. Board of Education* (1975), 32 Ill. App. 3d 83, 88.

Applying the above mentioned rules of construction, it must be concluded that Butler could not develop Autumn Oaks for anything other than a "village retail center." The July 11 letter states that Butler will not develop Autumn Oaks for anything other than a "village retail center" unless McDonald's has not exercised its option to repurchase Autumn Oaks. At the same time, the July 10 agreement

allows for the residential development of Autumn Oaks. Although these documents seem to contradict one another, the two can be reconciled. The July 11 letter is specific in limiting development of Autumn Oaks to a particular use ("retail village center"). On the other hand, the July 10 contract is a more generalized limitation allowing for development under the "residential zoning classification *** or such other use as may hereafter be permitted." Moreover, the July 11 letter places a specific limitation on development for a limited period of time, while the July 10 contract is unlimited as to duration and extends beyond the five-year period should McDonald's not exercise its option to purchase. Consequently, the contract must be interpreted to limit development of Autumn Oaks to a "retail village center" for the first five years after the closing.

In light of the above interpretation of the agreement reached between the parties, we conclude that McDonald's rightfully refused to approve plans to put Natoma on Autumn Oaks, particularly in light of the March 13 letter which stated that it was Butler's intent to continue to use the house for residential purposes. Thus, the placing of Natoma on Autumn Oaks was not the beginning of substantial improvement because it was not the beginning of improvements for a "village retail center." Consequently, McDonald's has a right to repurchase Autumn Oaks pursuant to the contract.

■ Defendants next contend that Richard Geyser, who testified to the reasonableness of McDonald's withholding approval of Butler's development plans, should not have been allowed to testify as an expert witness in rebuttal because McDonald's had not disclosed his identity in accordance with Supreme Court Rule 220 (103 Ill. 2d R. 220). In response, McDonald's contends that because defendants did not move for an order setting a date upon which all expert witnesses were to be disclosed, they are now estopped from objecting to the late disclosure of Geyser. McDonald's also contends that allowing Geyser's testimony was not error because the decision to allow or disallow expert testimony is in the sound discretion of the judge. Finally, McDonald's contends that allowance of Geyser's testimony was not error because he was a rebuttal witness. We agree with defendants, but find that allowing Geyser to testify was not reversible error.

McDonald's contention that defendants are estopped from objecting to Geyser's testimony is without merit. Rule 220 states that "as to all expert witnesses not previously disclosed, the trial court, on its own motion ***, shall enter an order scheduling the dates upon which all expert witnesses, including rebuttal experts, shall be disclosed." (103 Ill. 2d R. 220(b)(1).) Thus, if one of the parties does not make a

motion to set a date upon which discovery is to close, it is the duty of the trial court to set such a date upon its own motion. (See also 103 Ill. 2d R. 220(b)(1), Committee Comments ("the rule provides that the trial court shall establish a specific schedule under which the experts for all parties must be disclosed").) Consequently, defendants' failure to make a motion to set a date for closure of discovery does not estop them from contending that Geyser's testimony should not have been allowed.

■■ ■ McDonald's contention that Geyser's testimony was allowable because such expert testimony is within the sound discretion of the judge must also fail. Supreme Court Rule 220 states:

"(b) Disclosure

(1) *Expert witness.* Where the testimony of experts is reasonably contemplated, the parties will act in good faith to seasonably:

(i) ascertain the identity of such witnesses, and

(ii) obtain from them the opinions upon which they may be requested to testify." (103 Ill. 2d R. 220.)

Rule 220 further provides that all discovery regarding expert witnesses is to be completed "not later than 60 days before the date on which the trial court reasonably anticipates the trial will commence." (103 Ill. 2d R. 220(b)(1).) Additionally, Rule 220 requires parties to "seasonably supplement" their answers. (103 Ill. 2d R. 220 (c)(3).) The reason for Rule 220 is that adequate trial preparation requires timely disclosure of expert witnesses. (*Fultz v. Peart* (1986), 144 Ill. App. 3d 364, 376.) Time is needed prior to trial to investigate the credentials of proposed expert witnesses and to discuss the substance of the expert's testimony with one's own experts in order to prepare for cross-examination properly. (144 Ill. App. 3d 364, 376.) In the present case, defendants were not informed that McDonald's would call an expert as a rebuttal witness until the final day of defendant's case, the day before the expert was to testify. Although defendants were given an opportunity to depose Geyser the morning that he testified, the trial court erred in allowing Geyser to be called as an expert witness. The deposition of Geyser did not give defendants adequate opportunity to investigate Geyser's background or to check his opinion with defendants' own experts, and defendants were prevented from adjusting their trial strategy due to the late date that they were apprised of McDonald's intent to call Geyser as an expert witness. *Ashford v. Ziemann* (1984), 99 Ill. 2d 353, 370.

■■ ■ Finally, the fact that Geyser was a rebuttal witness does not negate the impropriety of allowing him to testify. Supreme Court

Rule 220 clearly applies to rebuttal witnesses. (103 Ill. 2d R. 220(b)(1).) Therefore, Geyser should not have been allowed to testify.

Despite the fact that Geyser should not have been allowed to testify, such a mistake is not always reversible error. New trials shall only be ordered when the evidence improperly admitted appears to have affected the outcome of the trial. (*J. L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115.) No useful purpose is served by granting a new trial when the record reveals that a correction of the errors would have no effect on the result. (108 Ill. 2d 106, 115.) Here, a new trial could not result in a different outcome. Notification to defendants of Geyser's testimony would not change the facts of this case or their legal consequences. Butler was required to begin development of a "village retail center" within five years after the closing date or McDonald's would have a right to repurchase Autumn Oaks. Butler did not begin development of a "village retail center" within the five years after the closing, and McDonald's has exercised its right to repurchase Autumn Oaks. Therefore, defendants were not prejudiced by McDonald's failure to reveal Geyser at an earlier time, and a new trial would serve no useful purpose. See 108 Ill. 2d 106, 115.

■ Defendants next contend that the trial court's reference to the reputation of Paul Butler, former president of Butler, indicates that the trial court took into consideration facts which were not in evidence and, thus, committed reversible error. In response, McDonald's contends that the statements of the trial court do not indicate that the trial court took into account facts which were not admitted into evidence. We agree with McDonald's.

When the trial court is the trier of the facts every presumption will be accorded that the judge considered only admissible evidence and disregarded inadmissible evidence in reaching his conclusion. (*People v. Wallenberg* (1962), 24 Ill. 2d 350, 354.) Nevertheless, a trial court's statement, incorporated in the record, that it considered matters which were not in evidence necessarily rebuts this presumption. (24 Ill. 2d 350, 354.) In the present case, the trial court stated that it was "somewhat aware of [Paul Butler's] accomplishment's, and the dreams that he had, many of which were fulfilled." However, when viewed in context, the trial court's remarks as to Paul Butler do not lead to the conclusion that the trial court made its decision based on his reputation. Rather, the remarks of the trial court indicate that it made its decision based solely on the contract and the actions of defendants.

■ Finally, defendants contend that the trial court erred in al-

lowing Butler's former attorney, David Gooder, to testify because such testimony was a breach of the attorney-client privilege. In response, McDonald's contends that the testimony that Gooder gave should not have been excluded because it did not concern confidential matter. We agree with McDonald's.

The attorney-client privilege only applies to matters that are confidential. (*People v. Williams* (1983), 97 Ill. 2d 252, 294; *Griffin v. Griffin* (1888), 125 Ill. 430, 436.) In the present case, Gooder only testified as to matters that related to negotiations where representatives of McDonald's were present. Therefore, those communications are not subject to the attorney-client privilege.

However, even if this court were to conclude that Gooder's testimony had been within the realm of the attorney-client privilege, such a conclusion would not require reversal since the bulk of Gooder's testimony was given as an offer of proof. Gooder's testimony was not admitted as evidence and, therefore, is presumed not to have been considered by the trial court. *People v. Wallenberg* (1962), 24 Ill. 2d 350, 354.

Based on the foregoing analysis, the judgment of the trial court is affirmed.

Affirmed.

LINDBERG, P.J., and DUNN, J., concur.