MELVIN S. BORNSTEIN *et al.*, Plaintiffs-Appellees and Cross-Appellants, v. FIRST UNITED *et al.*, Defendants (Nathan Grossgold, Defendant-Appellant and Cross-Appellee; First Chicago Trust Company of Illinois, Counterplaintiff-Appellant; Melvin S. Bornstein *et al.*, Counterdefendants-Appellees).

First District (5th Division)   No. 1—90—3368

Opinion filed July 31, 1992.—Rehearing denied August 28, 1992.

Michael B. Susman and Jonathan L. Loew, both of Spitzer, Addis, Susman & Krull, of Chicago, for appellant First Chicago Trust Company of Illinois.

Beermann, Swerdlove, Woloshin & Barezky, of Chicago (Miles N. Beermann, Howard A. London, and Joel M. Horwich, of counsel), for appellees Melvin S. Bornstein, Roy A. Tosch, Barmel Enterprises Ltd. Pension Trust Fund, and Barmel Enterprises Ltd. Profit Sharing Trust Fund.

J. Timothy Eaton and Shelley Rice Weinberg, both of Coffield, Ungaretti, Harris & Slavin, of Chicago, for Nathan Grossgold.

Edward J. Halper and Randall J. Gingiss, both of Levenfeld, Eisenberg, Janger, Glassberg, Samotny & Halper, of Chicago, for *amicus curiae*.

PRESIDING JUSTICE McNULTY delivered the opinion of the court:

This action arises from a dispute between the beneficiaries of an Illinois land trust over the power to direct the land trustee. On appeal, we will consider whether the trial court correctly ruled that beneficiary Nathan Grossgold acted improperly in revoking the power of direction given to beneficiary Melvin Bornstein but that the trustee, First Chicago Trust Company, acted properly in refusing to honor Bornstein's power of direction. We will also consider whether the trial court properly assessed to Grossgold the attorney fees owed to the trustee.

The relevant facts follow. In 1969, plaintiffs Melvin Bornstein and Roy Tosch purchased approximately 116 acres of vacant real property in McHenry County, Illinois, known as Ridgewood Estates. In 1970, defendant Nathan Grossgold purchased one-sixth interest in the Ridgewood Estates property from Bornstein. On February 21, 1972, Grossgold, Bornstein and Tosch entered into a trust agreement forming land trust No. 241 at Mount Prospect State Bank, to hold title to the real property. First Chicago Trust Company later succeeded Mount Prospect Bank as trustee and is the current trustee. The trust agreement vests the power of direction in the trust beneficiaries.

On February 21, 1975, Grossgold, Bornstein and Tosch executed a power of direction, authorizing Bornstein to act as "their sole agent with the power of direction to conduct business for the benefit of the beneficiaries." All parties acknowledge that this 1975 power of direction was revocable.

On March 1, 1978, Grossgold collaterally assigned his beneficial interest in the land trust to the Barmel Pension Trust Fund and Barmel Profit Sharing Trust Fund (the Barmel Funds) to secure payment of a loan from the Barmel Funds. Bornstein was trustee of Barmel Funds. The Barmel Funds and Grossgold executed a loan agreement providing that Grossgold would execute a power of direction that would enable Bornstein to "withdraw from any proceeds of Ridgewood Station due and owing to [Grossgold], the sums of $70,000 plus future advances, plus interest, until paid in full." The loan agreement also provided that Barmel Funds would reassign Grossgold's one-sixth beneficial interest to him upon payment of the loan obligation. To give Bornstein this power of direction, the parties executed an assignment which contained the following language:

> "This assignment is being made as and for collateral security only. The power of direction shall be vested in Melvin S. Bornstein on behalf of assignees, until the obligation secured by this assignment is paid in full."

Copies of the loan agreement and assignment were duly lodged with the trustee on March 8, 1978. The record reveals that while the loan has not been repaid, Grossgold is not in default.

Grossgold claims that in early 1989, while preparing his tax returns, he learned that he had incurred capital gains on transactions involving the trust property of which he had been completely unaware. He began an investigation into Bornstein's activities. The trustee, at Grossgold's request, furnished Grossgold with a list of transactions in the trust property. The list of transactions showed several conveyances of trust property out of the trust and to Bornstein and Tosch individually. Grossgold asserts he had no knowledge of any of these transactions.

On December 14, 1989, Grossgold wrote to First United Trust Company and revoked his February 21, 1975, authorization to Bornstein to exercise the power of direction for the land trust. Grossgold requested that he receive written notice of all future transactions.

On December 26, 1989, Bornstein submitted a direction to convey to First United Trust Company requesting that the trustee deed the corpus of the trust to Melvin Bornstein and Roy Tosch. This direction to convey was executed by Bornstein and Tosch, as well as Barbara Bornstein, Bornstein's spouse. It was not executed by Grossgold.

In accordance with Grossgold's December 14, 1989, letter, First United Trust Company notified Grossgold that it had received this direction to convey from Bornstein. Upon receipt of this notice from the trustee, Grossgold objected to this conveyance of the land trust assets

to Bornstein and Tosch individually. On January 2, 1990, Grossgold notified the trustee of his objection by stating that:

> "This letter will serve to advise your bank that \*\*\* Bornstein and Tosch are converting property from the above Trust without my knowledge and consent, which includes my 1/6 beneficial ownership. I have no knowledge, books or records of this transaction, except for your notification, nor am I advised of the disposition of any of its proceeds \*\*\*.
>
> You are hereby directed not to convey any property of the Trust to \*\*\* Bornstein and Tosch in respect to their 'Direction to Convey' dated December 26, 1989."

The trustee, by letter of January 9, 1990, acknowledged Grossgold's objection and indicated it would take no further action until the dispute between the beneficiaries was resolved.

On January 30, 1990, plaintiffs Bornstein, Tosch and the Barmel Funds brought this suit, seeking a declaratory judgment, injunctive relief and damages against First Chicago and Grossgold. In count I, plaintiffs sought a declaratory judgment compelling the trustee to honor Bornstein's power of direction. In count II, plaintiffs requested a judgment for damages against the trustee for its refusal to honor Bornstein's power of direction and against Grossgold for the steps he took to prevent the trustee from so acting.

On March 12, 1990, First Chicago filed a complaint for interpleader pursuant to section 2—409 of the Code of Civil Procedure. (Ill. Rev. Stat. 1989, ch. 110, par. 2—409.) The trustee offered to deliver the corpus of the trust to the trial court or elsewhere as it would direct, and prayed that it be discharged from liability to the beneficiaries for all claims arising therefrom. The trustee also sought reimbursement from the beneficiaries for its attorney fees and litigation costs.

On April 11, 1990, First Chicago filed its motion for summary judgment as to the issues of interpleader and damages. On July 19, 1990, the trial court granted First Chicago's motion as to the issue of interpleader and instructed the trustee to continue to hold the trust property pending further order of the court. The trial court reserved ruling on the issues of damages and attorney fees until it resolved the dispute among the beneficiaries at trial.

At a bench trial, Bornstein and Tosch testified that they undertook a plan to improve the trust property. In 1989, Bornstein and Tosch purchased three additional acres at a cost of $20,000. They placed the title to this property in the land trust, along with title to

the other approximately 117 acres. Grossgold did not contribute any money for the purchase of this additional land.

Bornstein testified that pursuant to the plan of improvement, the trust property was divided into separate lots or phases. Each phase was to be developed and sold individually as improved property. The first three phases were developed and sold according to this plan, and First Chicago conveyed title upon Bornstein's direction to convey. In each case, First Chicago honored Bornstein's direction to convey without any question. However, as to the fourth phase, Bornstein was refused financing from First Chicago. Bornstein was eventually granted financing from the State Bank of Woodstock. However, Bornstein testified that as part of the deal, the State Bank of Woodstock required that title would have to be conveyed to the bank as the new land trustee. Accordingly, Bornstein testified that he directed First Chicago to convey the property to enable him to establish the Woodstock trust and receive the necessary financing. (Bornstein, however, directed First Chicago to convey the trust property to Bornstein and Tosch individually. It was only after litigation began that Bornstein offered to convey the property to Woodstock bank, as trustee.)

At the conclusion of trial, the court found that Grossgold assigned 100% of his beneficial interest in the trust to secure a loan from the Barmel Funds and that this assignment vested Grossgold's power of direction in Bornstein until Bornstein was paid in full. The court found that because the loan remained outstanding, Bornstein continued to control Grossgold's power of direction and Grossgold had no right to object to the direction to convey. The trial court further found that while Grossgold acted wrongfully by directing the trustee not to convey without his consent, the trustee acted properly in refusing to convey pending resolution of the dispute between the beneficiaries. Accordingly, the trustee was dismissed as a party defendant and the trial court entered judgment in its favor as to count II of the complaint. (Count II of the complaint remains pending in the trial court against Grossgold alone.) In addition, the trial court ruled that the trustee is entitled to its reasonable attorney fees and costs and because Grossgold's conduct was wrongful, Grossgold alone was required to satisfy such fees and cost. Lastly, the trial court ordered the trustee to convey the corpus of the trust to Bornstein, notwithstanding the fact that the trustee's attorney fees had yet to be satisfied. (The trustee has voluntarily dismissed its appeal of this issue.)

We will first consider whether the trial court erred in finding Grossgold's objection to Bornstein's direction to convey wrongful. It is clear that the 1975 power of direction gave Bornstein a broad

power of direction which authorized Bornstein to enter into transactions with the trust assets, that Grossgold had the right to revoke the 1975 power of direction and that when Grossgold wrote to the trustee on December 14, 1989, he did in fact revoke the 1975 power of direction. Therefore, we need only address whether the 1978 power of direction, executed in conjunction with the collateral assignment, gave Bornstein the broad power to direct the trust assets and was irrevocable until Grossgold paid the loan back in full. The 1978 assignment executed in connection with the loan agreement provided:

> "This assignment is being made as and for collateral security only. The power of direction shall be vested in Melvin S. Bornstein on behalf of assignees, until the obligation secured by this assignment is paid in full."

Grossgold contends that this collateral assignment did not give Bornstein the broad power to direct the trust assets, but instead gave Bornstein the limited power of direction to withdraw proceeds from trust assets due to Grossgold until the loan was paid off. Bornstein, in contrast, contends that the 1978 power of direction assigned to the Barmel Funds all of Grossgold's beneficial interest in the land trust, which entitled Bornstein to conduct all business on behalf of the beneficiaries. Bornstein contends that he will retain Grossgold's power of direction for as along as the loan remains outstanding, and until the loan is paid in full, Grossgold is powerless to revoke his assignment.

■ Reading the assignment alone, either Grossgold or Bornstein's interpretation of the 1978 power of direction seems legitimate. However, after reviewing the loan agreement executed at the same time as the power of direction, it is apparent that Bornstein was given only a limited power of direction to withdraw the proceeds in order to satisfy the loan. Bornstein was not given the broad power to direct the trust assets. The loan agreement provided that Grossgold would execute a power of direction that would enable Bornstein to "withdraw from any proceeds of [the trust property] due and owing to [Grossgold], the sums of $70,000 plus future advances, plus interest, until paid in full." The loan agreement and the assignment were executed as part of the same loan transaction and must therefore be considered together and construed with reference to each other. As the court explained in *Tepfer v. Deerfield Savings & Loan Association* (1983), 118 Ill. App. 3d 77, 80, 454 N.E.2d 676, 679:

> "The general rule is that in the absence of evidence of a contrary intention, where two or more instruments are executed by the same contracting parties in the course of the same transaction, the instruments will be considered together and

construed with reference to one another because they are, in the eyes of the law, one contract. \*\*\* This is true whether or not the instruments were executed simultaneously; if executed at different times as parts of the same transaction they will be construed together. [Citation.]

'Construing contemporaneous instruments together means simply that if there are any provisions in one instrument limiting, explaining, or otherwise affecting the provisions of another, they will be given effect.' [Citation.]"

Accordingly, construing these documents together, it is our opinion that the 1978 power of direction only authorized Bornstein to withdraw proceeds from the trust property and apply it to Grossgold's loan. It did not provide Bornstein with the power to transact business with the trust assets. Therefore we reverse the trial court's finding that Grossgold acted wrongfully in directing the trustee not to convey without his consent. When Grossgold revoked the 1975 power of direction, Bornstein no longer had a right to direct the trust property.

■ Because of the ambiguity of the 1978 power of direction, we also find that the trustee acted properly in refusing to convey the trust property to Bornstein individually. Where there are multiple beneficiaries named in a trust, a trustee is under a duty to deal impartially with each of them. (*Comtrade, Inc. v. First National Bank* (1986), 146 Ill. App. 3d 1069, 497 N.E.2d 527.) If there are conflicting claims between beneficiaries, a trustee who ignores the demand of one beneficiary in order to comply with the demands of another can be held liable for resulting damages. (*McBride v. Commercial Bank* (1981), 101 Ill. App. 3d 760, 428 N.E.2d 739.) When faced with these conflicting claims, a trustee is not required to make a determination as to the rights of the beneficiaries, but instead should file an interpleader action. *In re Estate of Szorek* (1990), 194 Ill. App. 3d 750, 551 N.E.2d 697.

■ The trustee here was faced with conflicting directions by the beneficiaries of the trust. Bornstein and Tosch ordered the trustee to deed the corpus of the trust directly to them, while Grossgold informed the trustee that Bornstein and Tosch sought to defraud him and the trustee should not allow Bornstein to direct the trust corpus without Grossgold's approval. The trustee therefore complied with its duty to treat each beneficiary impartially by interpleading the parties and letting the trial court adjudicate their conflict.

■ The next issue before the court concerns whether the trial court erred in holding Grossgold solely responsible for the trustee's attorney fees. The trial court assessed Grossgold with the trustee's

attorney fees and costs incurred in connection with the dispute between the beneficiaries because of Grossgold's "wrongful objection to the conveyance \*\*\* and wrongful revocation of his 1978 power of direction." The trial court stated that the "language of the trust deals with the unusual and ordinary expenses of the transactions, not the costs of litigation." Not only do we disagree with the trial court that Grossgold's actions were wrongful, but we find that in reaching its decision that Grossgold is solely responsible for the trustee's attorney fees, the trial court disregarded the express language of the land trust agreement. The land trust agreement provides:

> "In case said trustee shall make any advances of money on account of this trustee or *shall be made a party to any litigation on account of holding title to said real estate or in connection with this trust,* or in case said trustee shall be compelled to pay any sum of money on account of this trust, whether on account of breach of contract, injury to personal property, fines or penalties under any law or *otherwise, the beneficiaries hereunder do hereby jointly and severally agree that they will pay on demand to said trustee, with interest thereon at the rate of 7% per annum, all such disbursements or advancements or payments made by said trustee, together with its expenses, including reasonable attorney's fees \*\*\*."* (Emphasis added.)

Therefore, the trust agreement specifically provides that when the trustee is made a party to any litigation involving the trust, the beneficiaries will be jointly and severally liable for the trustee's attorney fees and not merely for the transactional charges. Moreover, the trust agreement imposes the obligation on all of the beneficiaries, without distinguishing between beneficiaries who have greater or lesser culpability.

Here, the terms of the trust agreement are clear and unambiguous, and it was the trial court's obligation to enforce the terms of this contract as written. It is well settled that the rules of contract construction apply to trust agreements. (*Northern Trust Co. v. Tarre* (1981), 86 Ill. 2d 441, 427 N.E.2d 1217.) These rules provide that the parties to a contract are presumed to have intended what their language clearly imports. (*National Acceptance Co. v. Exchange National Bank* (1968), 101 Ill. App. 2d 396, 243 N.E.2d 264.) The trial court therefore has no discretion to require the parties to accept any terms other than those in their contract. (*Village of Grandview v. City of Springfield* (1984), 122 Ill. App. 3d 794, 461 N.E.2d 1031.) In conclusion, we note that the beneficiaries are jointly and severally liable not only for the trustee's attorney fees incurred during the litiga-

tion below, but they are also liable for those fees the trustee has incurred in defending this appeal. *In re Estate of Szorek* (1990), 194 Ill. App. 3d 750, 760-61, 551 N.E.2d 697, 704.

Accordingly, the decision of the trial court is reversed in part and affirmed in part.

Affirmed in part; reversed in part.

LORENZ and MURRAY, JJ., concur.