In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-2768

IFC CREDIT CORP., an Illinois
corporation,

*Plaintiff-Appellant,*

*v.*

BURTON INDUSTRIES, INC., and
CLARK JOHNSON,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 5906—**Ronald A. Guzmán**, *Judge.*

———————

ARGUED APRIL 10, 2008—DECIDED JULY 30, 2008

———————

Before FLAUM, KANNE, and EVANS, *Circuit Judges.*

KANNE, *Circuit Judge.* This is the third appeal that we have addressed related to the wide-spread fraud committed by the bogus telecommunications provider, NorVergence, Inc. *See IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 991 (7th Cir. 2008); *IFC Credit Corp. v. Aliano Bros. Gen. Contrs., Inc.*, 437 F.3d 606, 607 (7th Cir. 2006). We need not address that fraud directly, however; it serves only as the backdrop for the

lawsuit IFC Credit Corp. brought against Burton Industries, Inc., and its president Clark Johnson (and to whom we will collectively refer as "Burton"). IFC Credit alleged that Burton breached the equipment lease that it entered into with NorVergence, and which IFC Credit subsequently purchased. Both parties sought summary judgment; the district court granted Burton's motion, and denied IFC's motion. We affirm.

## I. HISTORY

In January 2004, NorVergence approached Burton, a manufacturer of robotic-automation systems, with a deal that Burton could not refuse: NorVergence claimed that its telecommunications equipment line, which was purportedly spearheaded by the Merged Access Transport Intelligent Xchange device (or MATRIX for short),[1] could provide Burton with top-notch telecommunications services at rock-bottom costs. Burton was hooked by NorVergence's promises of savings, and on February 5, 2004, the two companies' representatives met to draft a lease for NorVergence's equipment. At that meeting, Burton's Vice President Jeff Johnson agreed to lease one MATRIX device for five years, and he signed two documents to consummate the deal: a Hardware Applica-

---

[1] Curious readers might take a page from Keanu Reeves and ask, "What is the MATRIX?" The answer is that the MATRIX was nothing—it was a box filled with a series of wires and an everyday network router that, despite NorVergence's promises, served no purpose in a telecommunications network, much less provided vast savings. *See IFC Credit Corp.*, 512 F.3d at 991.

tion and an Equipment Rental Agreement. However, NorVergence subsequently determined that the Equipment Rental Agreement should instead be signed by Burton's President, Jeff's father Clark Johnson. After some back-and-forth between Burton and NorVergence regarding the forms Clark needed to sign, Clark signed the Equipment Rental Agreement about one month later.

The Equipment Rental Agreement and Hardware Application together contained four provisions that are pertinent to this appeal. First, the Equipment Rental Agreement contained a "hell-or-high-water clause," stating that Burton's obligation to make its lease payments was "unconditional despite equipment failure, damage, loss or any other problem." Second, the Equipment Rental Agreement contained an assignment clause limiting the claims that Burton could bring against any company that purchased the Agreement from NorVergence; specifically, the clause provided that Burton agreed that it would not assert against the new owner "any claims, defenses or set-offs" that it might have against NorVergence. The Equipment Rental Agreement also contained a merger clause that stated that the "terms and conditions" of the Agreement were the "complete and exclusive statement" of the Agreement, and that "[t]erms or oral promises not contained" in the Agreement would "not be legally enforced." Finally, the Hardware Application stated that the Equipment Rental Agreement was not binding upon either Burton or NorVergence until (1) Burton's "application [was] approved for the MATRIX Hardware Solution"; (2) "the system [was] mounted in [Burton's] phone closet"; and (3) Burton submitted a "'Delivery and Acceptance Receipt'" to NorVergence.

On May 14, 2004, NorVergence delivered to Burton the MATRIX equipment it leased. Burton's general manager,

David Yanniello, accepted the equipment and signed the Delivery and Acceptance Receipt that accompanied it. When Yanniello asked when the equipment would be installed, the delivery person informed Yanniello that he would return another day to mount the equipment in Burton's phone closet. However, the delivery person never returned, and no other individual from NorVergence ever installed the MATRIX equipment. In fact, the employees at Burton never removed the equipment from its box.

Four days after NorVergence delivered the MATRIX equipment, IFC Credit purchased Burton's equipment lease from NorVergence. But seeing that the MATRIX equipment was never installed, Burton refused to make its lease payments to IFC Credit. IFC Credit subsequently sued Burton for breach of contract. Discovery ensued, and both companies eventually filed cross-motions for summary judgment. For its part, Burton argued, among other things, that the Equipment Rental Agreement was not a fully integrated contract by itself, and that the district court should turn to the Hardware Application to determine Burton's obligations. Burton further pointed out that the Hardware Application stated that it was not bound by the Equipment Rental Agreement until the MATRIX equipment was "mounted in [its] phone closet." And because the equipment never was "mounted in [its] phone closet," Burton argued, no equipment lease ever existed. IFC Credit, in turn, contended that it was due summary judgment for two reasons. First, the company asserted that because the Equipment Rental Agreement contained a merger clause, Illinois's parol evidence rule barred the district court from considering the Hardware Application and the Equipment Rental Agreement to-

gether. As such, IFC Credit continued, the Equipment Rental Agreement's "hell-or-high-water clause" obligated Burton to make the lease payments to which it agreed, even if the MATRIX equipment was never mounted in its phone closet. IFC Credit also argued that, in any event, the Equipment Rental Agreement's assignment clause precluded Burton from exercising any defense against IFC Credit for its non-payment.

The district court granted Burton's motion for summary judgment, and denied IFC Credit's motion. The court disagreed with IFC Credit that the parol evidence rule prevented it from looking to the Hardware Application to ascertain Burton's obligations under the Equipment Rental Agreement. Looking, then, at the Hardware Application, the court determined that the Equipment Rental Agreement did not bind either Burton or NorVergence to its terms until the MATRIX system was "mounted in [Burton's] phone closet." And because the MATRIX system was never "mounted in [the] phone closet," the court stated, Burton was correct to assert that no equipment lease existed. The court thus concluded that Burton had no obligation to make its lease payments, dooming IFC Credit's arguments that Burton had the duty to pay under the Equipment Rental Agreement's "hell-or-high-water" and assignment clauses. The court then granted Burton's motion for summary judgment, and denied IFC Credit's motion.

## II. ANALYSIS

IFC Credit challenges both the district court's grant of summary judgment to Burton and the court's denial of its motion for summary judgment. Specifically, IFC Credit

contends that the district court granted summary judgment to Burton only after violating Illinois's parol evidence rule by considering the Equipment Rental Agreement and Hardware Application together. IFC Credit also asserts that it was due summary judgment because the Equipment Rental Agreement's "hell-or-high-water clause" compelled Burton to make its lease payments. IFC Credit further argues that the district court failed to consider that the Equipment Rental Agreement's assignment clause precluded Burton from defending against its failure to make its lease payments.

We review the district court's grant of summary judgment *de novo*. *See Cherry v. Auburn Gear, Inc.*, 441 F.3d 476, 481 (7th Cir. 2006). In examining the court's decision regarding Burton's and IFC Credit's cross-motions for summary judgment, we construe the facts and draw inferences "in favor of the party against whom the motion under consideration is made." *In re United Air Lines, Inc.*, 453 F.3d 463, 468 (7th Cir. 2006) (citation omitted). And in so reviewing the record, we examine whether there is a genuine issue of material fact that precludes judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Cady v. Sheahan*, 467 F.3d 1057, 1060-61 (7th Cir. 2006).

We turn first to IFC Credit's contention that the district court violated the parol evidence rule by considering the Equipment Rental Agreement and Hardware Application together. Under Illinois law—which, the parties agree, governs our review—the parol evidence rule generally excludes evidence of prior agreements or contemporaneous oral agreements if the evidence is introduced to vary or contradict the terms of a written contract. *See* 810 Ill. Comp. Stat. 5/2-202; *Hessler v. Crystal*

*Lake Chrysler-Plymouth, Inc.*, 788 N.E.2d 405, 412 (Ill. App. Ct. 2003); *McDonald's Corp. v. Butler Co.*, 511 N.E.2d 912, 917 (Ill. App. Ct. 1987). As IFC Credit correctly states, the rule is implicated whenever the contract in question is integrated, *see Hessler*, 788 N.E.2d at 412-13, meaning that the parties intended the contract "to be a final and complete expression of the entire agreement," *J&B Steel Contractors, Inc. v. C. Iber & Sons, Inc.*, 617 N.E.2d 405, 409 (Ill. App. Ct. 1993); *see also Pecora v. Szabo*, 418 N.E.2d 431, 435 (Ill. App. Ct. 1981).

IFC Credit argues that the parol evidence rule is triggered here because the Equipment Rental Agreement was fully integrated by virtue of its merger clause. Thus, IFC Credit continues, the district court was wrong to look at the Hardware Application when concluding that no equipment lease existed.

But IFC Credit's argument is based on a fundamental misunderstanding of Illinois's parol evidence rule: even if the contract in question is integrated, the rule "does not bar contemporaneous written documents from being admitted." *See McDonald's Corp.*, 511 N.E.2d at 917; *Pecora*, 418 N.E.2d at 436. In fact, Illinois law mandates that when "different instruments are executed together as part of one transaction or agreement, they are to be read together and construed as constituting but a single instrument." *McDonald's Corp.*, 511 N.E.2d at 917; *see also Home Ins. Co. v. Chi. & Nw. Transp.* Co., 56 F.3d 763, 766 (7th Cir. 1995). The instruments do not even need to be executed simultaneously; " 'if executed at different times as parts of the same transaction they will be construed together.' " *Labor World, Inc. v. Just Parts, Inc.*, 735 N.E.2d 149, 152 (Ill. App. Ct. 2000) (quoting *Bornstein v. First United*, 597 N.E.2d 870, 874 (Ill. App. Ct. 1992)).

When viewed in this light, IFC Credit's parol-evidence argument is meritless. IFC Credit does not dispute that the Equipment Rental Agreement and the Hardware Application were executed together as part of Burton's lease of the MATRIX equipment. In fact, IFC Credit admits as much by recounting that Jeff and Clark Johnson entered Burton into the lease by signing the Hardware Application and the Equipment Rental Agreement, respectively. *See id.* Thus, the parol evidence rule did not prohibit the district court from considering the Equipment Rental Agreement and the Hardware Application together.

And viewing the Equipment Rental Agreement and the Hardware Application together, it is clear that no equipment lease ever existed. By executing the Hardware Application, both Burton and NorVergence clearly agreed to a condition precedent to the formation of the Equipment Rental Agreement: until the MATRIX system was "mounted in [Burton's] phone closet," neither party was bound by the Equipment Rental Agreement's terms. And because that condition never occurred, it was as if the Equipment Rental Agreement—along with its "hell-or-high-water" and assignment clauses—never existed in the first place. *See Quake Constr. Inc. v. Am. Airlines, Inc.*, 565 N.E.2d 990, 993-94 (Ill. 1990) (stating no contract existed when conditions precedent to contract formation were not met); *Ceres Ill., Inc. v. Ill. Scrap Processing, Inc.*, 500 N.E.2d 1, 5 (Ill. 1986) ("[E]ven where the essential terms have been agreed upon, 'if the clear intent of the parties is that neither will be legally bound until the execution and delivery of a formal agreement, then no contract comes into existence until such execution and delivery.'" (quoting *Chi. Title & Trust Co. v. Ceco Corp.*, 415 N.E.2d 668,

677 (Ill. App. Ct. 1980))); *Ebert v. Dr. Scholl's Foot Comfort Shops, Inc.*, 484 N.E.2d 1178, 1185 (Ill. App. Ct. 1985) (same). To put it another way, NorVergence sold IFC Credit an equipment lease that never existed. Thus, contrary to IFC Credit's assertions, Burton was never obligated to make its lease payments, and it never agreed not to assert "any claims, defenses, or set-offs" against any company who purchased from NorVergence the (non-existent) lease. *See* 810 Ill. Comp. Stat. 5/9-403(b) (stating that account assignee can enforce assignment agreement against account debtor *when debtor and account assignor enter into such agreement*). IFC Credit's challenge to the district court's judgment therefore fails.

### III. CONCLUSION

We AFFIRM both the district court's grant of summary judgment to Burton and its denial of IFC Credit's motion for summary judgment.