In the

# United States Court of Appeals
### For the Seventh Circuit

No. 07-1037

IFC CREDIT CORPORATION,

*Plaintiff-Appellant,*

*v.*

UNITED BUSINESS & INDUSTRIAL
FEDERAL CREDIT UNION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 04 C 5905—**Matthew F. Kennelly**, *Judge.*

ARGUED NOVEMBER 8, 2007—DECIDED JANUARY 15, 2008

Before EASTERBROOK, *Chief Judge*, and FLAUM and
KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Norvergence sold tele-
communications equipment and services—or claimed to
do so. After three apparently flourishing years it col-
lapsed. The supposedly wondrous equipment it sold or
rented, which it called a Merged Access Transport Intelli-
gent Xchange (MATRIX) device, turned out to be a stan-
dard integrated-access box with none of the benefits
that Norvergence had touted.

Our case is one of many filed by IFC Credit Corporation
and other commercial factors that bought the right to

payments under these contracts. When Norvergence stopped providing telecom services, its customers stopped paying. (Some customers stopped paying even earlier, when savings did not materialize.) But IFC and similar entities claim to be holders in due course. If they have this status, then personal defenses that the customers could have asserted against Norvergence are unavailable, and the customers must pay IFC even though Norvergence told lies to make the sales.

We have held that the forum-selection clause that Norvergence included in contracts is valid and may be enforced by IFC (and similarly situated firms) unless the clause was the result of a distinct fraud. *IFC Credit Corp. v. Aliano Brothers General Contractors, Inc.*, 437 F.3d 606 (7th Cir. 2006). In this case, without discussing *Aliano Brothers*, the district court held that the forum-selection clause's complement, an agreement to resolve any dispute by bench trial in the selected forum, is invalid. IFC's suit to recover the contractual payments was submitted to a jury, which returned a verdict in favor of United Business & Industrial Federal Credit Union.

*Aliano Brothers* devoted a good deal of attention to the question whether state or federal law governs the validity of a forum-selection clause, when the forum being selected is a particular federal court. The decision in *Aliano Brothers* observed that federal courts have a substantial interest in agreements that purport to control where and when, within the federal system, litigation may occur. The same may be said about an agreement to a bench trial; Fed. R. Civ. P. 38 governs the choice between bench and jury trial once a suit has begun, raising the question whether federal law might apply to a pre-litigation agreement to waive a jury. But although *Aliano Brothers* left open the choice between state and federal

law, *Abbott Laboratories v. Takeda Pharmaceutical Co.*, 476 F.3d 421 (7th Cir. 2007), later held that the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute. Taking the same approach here means that Illinois law determines the validity of the waiver in the contract, for the pact selects Illinois substantive law as well as an Illinois judicial forum.

In a letter filed after oral argument, IFC argued for the first time that federal law controls the validity of the contract's bench-trial clause. It relies on *Simler v. Conner*, 372 U.S. 221 (1963). *Simler* holds that the classification of a dispute as "legal" or "equitable" must be made under federal norms: after all, the phrase "at common law," which guarantees a right to trial by jury, is in the seventh amendment, and meaning of this phrase therefore must be a matter of federal law. It does not follow that national law also controls the validity of a contractual agreement to a bench trial. There is no general federal law of contracts after *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938); if "federal law" did control, the best it could do would be to use state law as the rule of decision. See *United States v. Kimbell Foods, Inc.*, 440 U.S. 715 (1979). One could imagine a federal rule preventing states from discriminating for or against particular terms; this is the approach that the Federal Arbitration Act takes to another form of jury waiver, an agreement to arbitrate, which is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2. We therefore ask whether the agreement is valid under the law of Illinois.

Contracts for the sale or rental of equipment between merchants are governed by the Uniform Commercial Code, which Illinois has enacted. Terms in form contracts are routinely enforced under the UCC, unless a "battle of the forms" occurs (see §2–207) or the term would be

unconscionable (see §2–302). (We cite the UCC's provisions on sales; similar provisions in Article 2A cover leases.) There was only one form, Norvergence's, so §2–207 need not be consulted, and the Credit Union does not contend that a waiver of jury trial is unconscionable. Merchants often prefer professional adjudicators (be they judges or arbitrators) over amateurs.

What the district judge said is that the bench-trial clause is invalid because it was not the subject of negotiation (that is, it appears on a form), does not stand out (it is in the same type as other clauses), and was not reviewed by the Credit Union's lawyer before the contract was signed (the Credit Union's executives negotiated the deal without the participation of counsel). The UCC designates a few kinds of provisions as valid only if separately signed. See §2–205 (firm-offer clause in form contract supplied by the buyer is valid only if separately signed by the seller); §2–209 (clause limiting modification to a signed writing, in a contract between a merchant and a non-merchant, is valid only if separately signed by the non-merchant). But the UCC does not contain any separate-signing or separate-negotiation requirement for a clause agreeing to a bench trial, and the parties have not cited (and we did not find) any decision by a state court of Illinois creating such a requirement. Nor does the UCC make the validity of an agreement turn on review by a lawyer. The Credit Union had an opportunity to submit the document to counsel; it cannot use its own decision to bypass legal advice as a reason why it is not bound by what it signed.

Form agreements are common and enforceable. Lots of firms participate in the telecom-equipment business, and all a customer need do is say no to any given offer and let the competition continue. Norvergence wanted the customers' money; to get it, Norvergence had to propose terms that the customers were willing to accept. Illinois

does resolve ambiguities against firms that use form contracts (that rule is commonly invoked in insurance disputes), but it honors straightforward terms with understandable meanings. See, e.g., *Nicor, Inc. v. Associated Electric & Gas Insurance Services, Ltd.*, 223 Ill. 2d 407, 416–17, 860 N.E.2d 280, 285–86 (2006). See also *Farmers Automobile Insurance Ass'n v. St. Paul Mercury Insurance Co.*, 482 F.3d 976 (7th Cir. 2007). There is nothing ambiguous about the bench-trial clause in the contract between Norvergence and the Credit Union.

Ever since *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991), enforced a forum-selection clause printed in tiny type on the back of a cruise-ship ticket, it has been hard to find decisions holding terms invalid on the ground that something is wrong with non-negotiable terms in form contracts. See also, e.g., *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991) (unequal bargaining power does not justify refusal to enforce an arbitration clause in a form contract); *Seawright v. American General Financial Services, Inc.*, 507 F.3d 967 (6th Cir. 2007). As long as the market is competitive, sellers must adopt terms that buyers find acceptable; onerous terms just lead to lower prices. See, e.g., *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996); George L. Priest, *A Theory of the Consumer Product Warranty*, 90 Yale L.J. 1297 (1981). If buyers prefer juries, then an agreement waiving a jury comes with a lower price to compensate buyers for the loss—though if bench trials reduce the cost of litigation, then sellers may be better off even at the lower price, for they may save more in legal expenses than they forego in receipts from customers.

There is no difference in principle between the content of a seller's form contract and the content of that seller's products. The judiciary does not monitor the content of

the products, demanding that a telecom switch provide 50 circuits even though the seller promised (and delivered) 40 circuits. It does not matter that the seller's offer was non-negotiable (if, say, it offered 40-circuit boxes and 100-circuit boxes, but nothing in between); just so with procedural clauses, such as jury waivers. As long as the price is negotiable and the customer may shop elsewhere, consumer protection comes from competition rather than judicial intervention. Making the institution of contract unreliable by trying to adjust matters *ex post* in favor of the weaker party will just make weaker parties worse off in the long run. *Original Great American Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 282 (7th Cir. 1992) ("The idea that favoring one side or the other in a class of contract disputes can redistribute wealth is one of the most persistent illusions of judicial power. It comes from failing to consider the full consequences of legal decisions. Courts deciding contract cases cannot durably shift the balance of advantages to the weaker side of the market; they can only make contracts more costly to that side in the future, because [the other side] will demand compensation for bearing onerous terms.").

Two appellate decisions have held that agreements to resolve disputes by bench trials are enforceable only if extra evidence of negotiation or consent supports that clause. They rely on the fact that, in federal court, the seventh amendment gives the jury a constitutional status. See *National Equipment Rental, Ltd. v. Hendrix*, 565 F.2d 255, 257–58 (2d Cir. 1977); *K.M.C. Co. v. Irving Trust Co.*, 757 F.2d 752, 755–57 (6th Cir. 1985). These decisions do not persuade us. They begin from the proposition that only a knowing and intelligent waiver, with the usual formalities that "waiver" entails, may surrender the right to a jury trial. Yet if the parties' contract is silent on the issue, then Fed. R. Civ. P. 38 will govern.

And Rule 38 says that omission of a jury demand from a complaint or answer forfeits any opportunity to have the case heard by a jury. Omissions may occur by accident or lack of foresight. If accidental forfeitures can blot out any right to a jury trial—for no one argues that Rule 38 is unconstitutional—then there is no federal rule that bench-trial agreements must be attended by extra negotiation or depend on evidence of voluntariness beyond what is required to make the rest of the contract legally effective.

Consider an agreement to arbitrate, which surrenders not only a jury trial but also the right to any judicial forum. Courts do not impose special negotiation requirements on arbitration clauses in form contracts. See, e.g., *Oblix, Inc. v. Winiecki*, 374 F.3d 488 (7th Cir. 2004); *Carbajal v. H&R Block Tax Services, Inc.*, 372 F.3d 903 (7th Cir. 2004). So too with forum-selection clauses; parties may agree to a forum in another nation, where juries are unknown, but this does not make forum-selection clauses suspect. Even confession-of-judgment clauses in cognovit notes are enforceable. See *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972). Agreement to a bench trial cannot logically be treated less favorably than agreement to confess judgment, or arbitrate, or litigate in a forum that will not use a jury. Many courts accordingly hold that an agreement to resolve a dispute in a bench trial is no less valid than the rest of the contract in which the clause appears. See, e.g., *Leasing Service Corp. v. Crane*, 804 F.2d 828, 832 (4th Cir. 1986); *Telum, Inc. v. E.F. Hutton Credit Corp.*, 859 F.2d 835, 837–38 (10th Cir. 1988). To the extent that *National Equipment Rental* and *K.M.C.* hold otherwise, we do not follow them.

We have circulated this opinion to the full court under Circuit Rule 40(e), because it may create a conflict among the circuits. Although both *Leasing Service* and

*Telum* hold bench-trial agreements valid as components of otherwise-valid contracts, they also state (inconsistently, it seems to us) that an agreement to resolve a dispute by a bench trial must be assessed by the standards of "waiver." Moreover, *National Equipment*, *K.M.C.*, *Leasing Service*, and *Telum* all approach the inquiry on the assumption (which the parties to those cases apparently did not contest) that federal law governs the validity of such a clause, even when state law applies to the substance of the parties' dispute. None of the four decisions mentions or attempts to justify the disparate treatment of bench-trial and arbitration agreements, or the oddity of applying a waiver standard to a contract when Rule 38 does not use a waiver approach once the case gets to court. For the reasons we have given, we hold that state law governs the validity of a bench-trial agreement in a case under the diversity jurisdiction, and that the clause at issue here is enforceable under the UCC. None of the active judges favored a hearing en banc on this issue.

One final subject requires brief consideration. Just before the trial began, the Credit Union raised a defense of fraud in the factum, one of the "real defenses" that apply even to a holder in due course. This was the ground on which it prevailed before the jury. If a person signs a contract thinking it to be something else—say, a request for sales literature—then the pact is void. And a waiver-of-jury clause in a void contract would be void as well.

Things are not quite this simple, however. If the judge determines before trial that the contract is void, and that the jury waiver falls with it, then there is nothing to be tried to a jury. If the facts leave a material dispute requiring resolution by a trier of fact—here IFC maintains that the Credit Union knew full well exactly what it was signing, and that its defense of fraud in the factum is just a misnamed defense of fraud in the

inducement—then the jury-waiver clause might be applied to determine whether a judge or a jury makes the critical decision.

In the law of arbitration, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), holds that, if the parties sign a contract containing an arbitration clause, then the arbitrator will decide whether the contract was signed only as a result of fraudulent inducement. Several courts have held that the defense of fraud in the factum must be treated like a defense of fraud in the inducement. See, e.g., *R.M. Perez & Associates, Inc. v. Welch*, 960 F.2d 534 (5th Cir. 1992); *C.B.S. Employees Federal Credit Union v. Donaldson, Lufkin & Jenrette Securities Corp.*, 912 F.2d 1563 (6th Cir. 1990). Others have held that a defense of fraud in the factum must be resolved by a judge in advance of submitting the remainder of the dispute to arbitration. See, e.g., *I.S. Joseph Co. v. Michigan Sugar Co.*, 803 F.2d 396 (8th Cir. 1986); *Three Valleys Municipal Water District v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991); *Cancanon v. Smith Barney Harris Upham & Co.*, 805 F.2d 998 (11th Cir. 1986). By parallel reasoning, when the clause waives a jury trial a judge would resolve a defense of fraud in the factum before deciding whether any remaining disputes would go to a jury.

We need not take sides in this conflict, for two reasons. First, the Credit Union has not argued that a judge must make a preliminary decision about a fraud-in-the-factum defense to determine whether the jury waiver is valid. This omission forfeits the argument. Second, whatever the best rule would be when a party says that it did not know the document it signed was a contract, that's not the Credit Union's position. It concedes knowledge that it was making a contractual commitment and argues only that it thought the contract one for communi-

cations services, as opposed to a combination of service and equipment. This means that the Credit Union knowingly assented to a contract containing a clause agreeing to a bench trial.

A judge, not a jury, must resolve the remaining disputes in this litigation. None of the other issues joined in the appellate briefs is likely to recur at a new trial, so no more need be said. The judgment is reversed, and the case is remanded for a new trial.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*