

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-381-CV

IN RE COLUMBIA MEDICAL CENTER                    RELATOR
OF LEWISVILLE SUBSIDIARY, L.P.,
D/B/A MEDICAL CENTER OF LEWISVILLE

------------

## ORIGINAL PROCEEDING

------------

## OPINION

------------

### I. INTRODUCTION

The issue we address in this original proceeding is whether the trial court abused its discretion by refusing to enforce a prelitigation contractual jury waiver contained in a lease executed by Relator Columbia Medical Center of Lewisville Subsidiary, L.P. d/b/a Medical Center of Lewisville (Medical Center) and Real Party in Interest, CenterPlace Properties, Ltd. (CenterPlace). Because Medical Center—as the party seeking to enforce the contractual jury waiver—met its evidentiary burden to rebut the presumption that the waiver

was not knowingly and voluntarily made and because CenterPlace did not offer any evidence that it did not knowingly and voluntarily agree to the contractual jury waiver in the lease, the trial court abused its discretion by refusing to enforce the waiver. Accordingly, we will conditionally grant the writ.

## II. FACTUAL AND PROCEDURAL BACKGROUND

CenterPlace is a Texas limited partnership that owns property in Flower Mound and the buildings located on that property known as CenterPlace I and CenterPlace II. Medical Center is a Texas limited partnership. In November 2004, CenterPlace and Medical Center executed a lease agreement. The parties represented at oral argument that the lease was "Medical Center's" lease, that is, that the lease was initially prepared by Medical Center. Dr. Ganesh Harpavat, in his capacity as President and General Partner of CenterPlace, signed the lease for CenterPlace as landlord. Howard K. Patterson, in his capacity as Vice President of Medical Center, signed the lease for Medical Center as tenant. Dr. Harpavat initialed six separate provisions of the nineteen-page lease and made six handwritten revisions to the lease. Section 24 of the lease, appearing on page fourteen, is a jury waiver provision. The provision is not bolded, not initialed by the parties, and is not set forth any differently than any other section in the lease.

2

Section 30 of the lease is titled "Right to Lease Additional Space" and notifies the "Tenant," i.e., Medical Center, that its rights are "subject to and subordinate to superior option rights or rights of first refusal held by the following tenants as of the Lease Date." The lease then lists eleven other tenants in the CenterPlace II building and their corresponding suite numbers.

In February 2006, the parties began negotiating an amended lease. Copies of e-mails exchanged by the parties and their attorneys appear in the record. CenterPlace was represented by counsel during the negotiations of the "First Amendment to Lease Agreement." One e-mail from Dr. Harpavat expressly states that "I have asked my attorney . . . to prepare the lease amendment papers." After approximately four months of negotiations, the parties executed the "First Amendment to Lease Agreement." The amendment contains a provision numbered as 11, which is titled "Ratification," and provides that "[t]he Lease remains in full force and effect as expressly modified by this Amendment, and is ratified and confirmed."

Subsequently, CenterPlace sued Medical Center, asserting various causes of action arising from the parties' dealings concerning the lease and the amended lease. Eventually, CenterPlace filed a demand for a jury trial. Medical Center filed a motion to quash CenterPlace's jury demand. Medical Center filed an affidavit and a supplemental affidavit in support of its motion to quash.

3

Numerous documents are attached to these affidavits, including the lease, the amended lease, and e-mails between the lawyers and the parties. Over 300 pages of documents were filed by Medical Center with the trial court prior to the hearing on Medical Center's motion to quash.

The trial court conducted a hearing on Medical Center's motion to quash; neither side presented live testimony at the hearing. Medical Center relied upon the documents attached to the affidavits it filed in support of its motion to quash. CenterPlace did not file a response or any documents in response to Medical Center's motion to quash. After the hearing, the trial court signed an order denying Medical Center's motion to quash. Medical Center then filed this original proceeding.

### III. STANDARD OF REVIEW

Mandamus relief is proper only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding).

## IV.  THE LAW

The constitutional right to trial by jury may be waived via contract so long as the waiver is made knowingly, voluntarily, and intelligently with sufficient awareness of the relevant circumstances and likely consequences.  *See In re Prudential*, 148 S.W.3d at 132; *Mikey's Houses L.L.C. v. Bank of Am*. 232 S.W.3d 145, 149 (Tex. App.—Fort Worth 2007, no pet., [mand. pending]).[1] We begin our analysis with a presumption against the waiver of jury trial; the burden is on the party seeking to enforce the prelitigation contractual jury waiver to rebut this presumption with prima facie evidence that the waiver was knowingly and voluntarily made with full awareness of the legal consequences.

---

[1] By way of explanation for the unusual subsequent history citation for *Mikey's Houses*, the parties in that case perfected an interlocutory appeal to our court.  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(d).  Although one justice dissented in *Mikey's Houses*, Bank of America did not file a petition for review with the Texas Supreme Court.  *See* Tex. Gov't Code Ann. § 22.225(c) (Vernon 2004 & Supp. 2008) (granting supreme court appellate jurisdiction over interlocutory appeal when appellate court justice issues a dissent).  Instead, after this court issued its mandate, Bank of America filed a mandamus with the Texas Supreme Court naming this court as respondent and praying that the supreme court issue a mandamus directing this court to "vacate and withdraw the opinion and judgment" entered in the interlocutory appeal.  *See In re Bank of Am., N.A.*, No. 07-0901 (pet. for writ of mandamus filed Nov. 2, 2007, courtesy copy served on Second Court of Appeals) (quoting language in prayer); *see also id.*, Brief in Support of Petition for Writ of Mandamus, at 33 (filed Mar. 21, 2008), *available at* http://www.supreme.courts.state.tx.us/ebriefs/07/07090101.pdf (quoting same language in prayer).  That petition for writ of mandamus is pending in the Texas Supreme Court.

*Mikey's Houses, L.L.C.*, 232 S.W.3d at 152 (citing *In re Prudential*, 148 S.W.3d at 132–33 and *In re Gen. Elec. Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006)). Evidence of the following nonexclusive factors may be considered in determining whether the party seeking to enforce a contractual waiver of the right to a jury trial has rebutted the presumption against the waiver by prima facie evidence that the waiver was knowingly and voluntarily made: (1) the parties' experience in negotiating the particular type of contract signed; (2) whether the parties were represented by counsel; (3) whether the waiving party's counsel had an opportunity to examine the agreement; (4) the parties' negotiations concerning the entire agreement; (5) the parties' negotiations concerning the waiver provision, if any; (6) the conspicuousness of the provision; and (7) the relative bargaining power of the parties. *Id*. at 153; *accord In re Gen. Elec. Capital Corp*., 203 S.W.3d at 316 (examining conspicuousness); *In re Prudential*, 148 S.W.3d at 134 (examining several of the listed factors); *RDO Fin. Servs. Co. v. Powell*, 191 F. Supp. 2d 811, 813–14 (N.D. Tex. 2002) (examining several of the listed factors).

## V. APPLICATION OF THE LAW TO THE FACTS

Here, the evidence presented to the trial court by Medical Center concerning the above nonexclusive list of factors constitutes prima facie evidence rebutting the presumption against the waiver of the constitutional

6

right to trial by jury and is some evidence that CenterPlace made the waiver knowingly and voluntarily. The evidence presented by Medical Center shows that CenterPlace was experienced in negotiating leases. CenterPlace was a landlord involved in leasing space in large commercial buildings. Section 30 of the lease executed by the parties indicates that when CenterPlace executed the lease containing the contractual jury waiver provision, it had already entered into leases with at least eleven other tenants in the same building. Although the record is silent as to whether CenterPlace was represented by counsel when the original lease was executed, the evidence conclusively establishes that CenterPlace was represented by counsel when the "First Amendment to Lease Agreement" was negotiated and executed. Numerous provisions of the original lease were modified by the amended lease, but the jury waiver provision was not. And the First Amendment to Lease Agreement ratified the unmodified portions of the original lease. Consequently, before CenterPlace entered into the lease amendment, counsel for CenterPlace did have the opportunity to review the jury waiver provision and did have the opportunity to make it part of the negotiations that occurred with respect to the amended lease. The parties' negotiations concerning both the original lease and the lease amendment were extensive. The original lease contains numerous handwritten interlineations made by Dr. Harpavat on behalf of CenterPlace. The lease

7

amendment was negotiated by CenterPlace's counsel over a period of approximately four months. The record contains no indication that the jury waiver provision was specifically negotiated. The jury waiver provision set forth in section 24 of the original lease is not conspicuous. It is set forth in the exact same manner as each of the other thirty-eight sections of the lease. The relative bargaining power of the parties was fairly equal. Both were Texas limited partnerships. They were entering into a landlord-tenant relationship through a lease agreement.

Thus, Medical Center produced prima facie evidence on five of the seven nonexclusive factors rebutting the presumption against waiver of the constitutional right to trial by jury. Weighing each of these factors, and viewing the totality of the circumstances surrounding the transaction as reflected in the record before us, Medical Center's evidence rebuts the presumption against the waiver. The burden then shifted to CenterPlace to produce evidence that its contractual waiver of its right to trial by jury was not knowingly and voluntarily made. *In re Gen. Elec. Capital Corp.*, 203 S.W.3d at 316; *Mikey's Houses, L.L.C.*, 232 S.W.3d at 156. CenterPlace offered no evidence at the hearing and filed no affidavits or evidence with the trial court prior to the hearing.

CenterPlace nonetheless contends that the facts here are similar to the facts in *Mikey's Houses, L.L.C.* and compel the same result as *Mikey's Houses,*

8

*L.L.C.* In *Mikey's Houses, L.L.C.*, this court, in a permissive interlocutory appeal, held that the party seeking to enforce a contractual jury waiver—Bank of America—had not met its burden of rebutting the presumption against waiver of the constitutional right to trial by jury. *See Mikey's Houses, L.L.C.*, 232 S.W.3d at 157. The facts here, however, are nothing like the facts in *Mikey's Houses, L.L.C.*

In *Mikey's Houses, L.L.C.*, the contractual jury waiver provision was set forth not in the sales contract executed between Mikey's Houses, L.L.C. and Bank of America, but in an addendum to the contract prepared by Bank of America on a Bank of America form that was not a standard Texas Real Estate Commission Form and that was presented to the two owners of Mikey's Houses L.L.C. after the sales contract had already been executed. *See id.* at 147–48. Here, the contractual jury waiver provision was set forth in the primary lease executed by CenterPlace and Medical Center. Mikey's Houses, L.L.C. was a business formed by two ladies to buy foreclosed homes and to renovate them for sale. *Id.* at 147. Here, CenterPlace was a much more sophisticated business; CenterPlace owned property in Flower Mound and two buildings located on that property known as CenterPlace I and CenterPlace II. In *Mikey's Houses, L.L.C.,* one of its owners testified that she believed the entire Bank of America addendum was just a typical "as is" provision,

establishing that Mikey's Houses, L.L.C. purchased the house and the property "as is." *Id.* at 154. CenterPlace offered no explanation indicating that it misunderstood the nature of the contract containing the jury waiver provision. Mikey's Houses, L.L.C. was not represented by an attorney at any time in its dealings with Bank of America. *Id*. at 154–55. CenterPlace was represented by an attorney during extensive negotiations for the lease amendment, and the lease amendment ratified the entire prior lease, including the contractual jury waiver provision. Additionally, CenterPlace had executed leases with at least eleven other tenants for space in its CenterPlace II building prior to executing the lease with Medical Center for space in that building. No evidence existed that Mikey's Houses, L.L.C. had negotiated any aspect of its sales contract or the Bank of America addendum containing the jury trial waiver. *Id*. at 155. Here, the original lease contains numerous interlineations initialed by CenterPlace and Medical Center, and the record contains correspondence relating to and red-lined versions of the lease amendment, establishing that CenterPlace did negotiate both the lease and the lease amendment.

In summary, the facts here do not compel the same result as in *Mikey's Houses, L.L.C.* Bank of America in *Mikey's Houses, L.L.C.*—as the party seeking to enforce the contractual jury waiver—did not meet its burden to rebut the presumption that the waiver was not knowingly and voluntarily made with

prima facie evidence of a knowing and voluntary waiver. *Id*. at 156. Here, Medical Center—as the party seeking to enforce the contractual jury waiver—did meet its burden to rebut the presumption that the waiver was not knowingly and voluntarily made by introducing prima facie evidence that the waiver was knowing and voluntarily made. Consequently, the burden shifted to CenterPlace to establish that the waiver was not made knowingly and voluntarily. *See In re Gen. Elec. Capital Corp*., 203 S.W.3d at 316; *Mikey's Houses, L.L.C.*, 232 S.W.3d at 153. CenterPlace did not offer any evidence at the hearing on Medical Center's motion to quash the jury demand and did not file any evidence for the trial court's consideration. Accordingly, CenterPlace did not meet the burden that shifted to it to establish that the waiver was not made knowingly and voluntarily.

We hold that in this case the trial court abused its discretion by failing to enforce the contractual jury waiver provision in the lease executed by the parties. Additionally, because no right of appeal exists from the trial court's ruling denying Medical Center's motion to quash CenterPlace's jury demand, Medical Center has no adequate remedy at law. *See In re Prudential*, 148 S.W.3d at 135-36.

## VI. CONCLUSION

Having determined that the trial court abused its discretion by failing to grant Medical Center's motion to quash CenterPlace's jury demand and having determined that Medical Center possesses no adequate remedy at law, we conditionally grant mandamus relief, order the trial court vacate its August 8, 2008 order denying Medical Center's motion to quash, remand this case to the trial court, and direct the trial court to place it on the court's nonjury docket.

SUE WALKER
JUSTICE

PANEL: GARDNER and WALKER, JJ.; and DIXON W. HOLMAN, J. (Senior Justice, Retired, Sitting by Assignment).

DELIVERED: January 8, 2009

12