IN THE SUPERIOR COURT

**FILED**
May 19, 2026 08:19 AM
SX-2021-CV-00490
TAMARA CHARLES
CLERK OF THE COURT

**SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| **DEEP END CATERING COMPANY, LLC.,** | **Case No. SX-2021-CV-00490** |
| **PLAINTIFF,** | **ACTION FOR DEBT, FORECLOSURE OF REAL PROPERTY** |
| v. | |
| **ST. CROIX FINANCIAL CENTER, INC.,** | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | |

Cite as 2026 VI SUPER 19

Appearances:

LEE J. ROHN, ESQ.
Lee J. Rohn and Associates, LLC
St. Croix, VI
*For Plaintiff*

ANDREW C. SIMPSON, ESQ.
Andrew C. Simpson, P.C.
St. Croix, VI
*For Defendant*

## MEMORANDUM OPINION AND ORDER

### PROCEDURAL POSTURE

¶1 **THIS MATTER** came before the Court on the Defendant's *Motion to Strike Jury Demand* ("Motion") supported by its *Memorandum in Support of Motion to Strike Jury Demand* ("Memorandum") filed on February 26, 2025, the *Plaintiff's Opposition to Motion to Strike Jury Demand* ("Opposition") filed on March 18, 2025, and the Defendant's *Reply in Support of Motion to Strike Jury Demand* ("Reply") filed on April 7, 2025. The Plaintiff filed a *Motion to File Sur Response* on April 30, 2025, which the Defendant opposed. On May 14, 2025, this Court ordered the parties to separately submit a brief providing a complete *Banks* analysis on the issue of whether the Seventh Amendment right to a jury trial in a civil case can be waived in a contract. The parties were to provide a full accounting of the position taken on the issue by the majority of courts from other jurisdictions. Both parties filed their briefs on June 17, 2025. While the Plaintiff had previously argued that the inquiry is in part factual in nature and should be decided at the summary judgment stage (*Opposition*, p. 2), both parties have since indicated, on the record in Court, that they believe the issue is now ripe for decision.

## BACKGROUND

¶2     The Plaintiff, Deep End Catering Company, LLC ("Deep End") was a tenant restaurant occupying premises owned by the Defendant, St. Croix Financial Center, Inc., which is now known as Tamarind Reef Resort and Marina, Inc. ("TRRM"). Deep End filed its *Complaint* against TRRM on June 29, 2021, alleging in part that TRRM was improperly charging Deep End for electrical, garbage, and water expenses. *Complaint*, p. 1. The *Complaint* further alleges that TRRM found a different tenant for the restaurant and demanded that Deep End vacate the property by December 15, 2021. *Complaint*, p. 2. The Defendant subsequently filed a motion to strike the Plaintiff's jury demand, asserting that the Plaintiff's right to resolve the civil dispute between the parties by jury trial had been waived by a provision in a lease agreement executed by the parties.

¶3     The parties' business relationship began in November of 2015,[1] when TRRM and Deep End entered into a commercial lease agreement for a five-year term ("original lease"). *Memorandum*, Exhibit A. The original lease contained the following clause:

> It is mutually agreed by and between Landlord and Tenant that the respective parties hereto shall and they hereby do waive trial by jury in any action proceeding or counterclaim brought by either of the parties hereto against the other on any matter whatsoever under, arising out of or resulting from this Lease, the relationship of Landlord and Tenant, Tenant's use of or occupancy of the Premises, and any emergency statutory or any other statutory remedy.

*Memorandum*, Exhibit A, pp. 22-23. The clause in the original lease is in bold print and is the second to last clause in the document. *Id.* Both parties placed their initials on each page; one set of which is located physically near the jury waiver clause, and the signature line is also in close proximity. *Id.*

¶4     Deep End is owned by Elena Hensley. *Opposition*, p. 2. Her affidavit was submitted with Deep End's *Opposition*. While the Defendant asserts that this affidavit is improper parol evidence, the Court will nonetheless take it into consideration, given the substantial rights at stake, and only for the limited purpose of determining whether the Plaintiff knowingly and voluntarily waived her

---

[1] There is an indication in Plaintiff's *Opposition* (*Opposition*, p.2) that Deep End initially assumed a lease from a different restaurant owner, but for the purposes of this inquiry the November 2015 document is the first lease which was negotiated solely between the parties to this action. Neither party, to date, has produced a copy of any lease signed before 2015. Thus, the Court cannot properly consider the claims of both parties regarding the alleged contents of such a prior document.

right to a jury trial.[2] Courts which allow pre-litigation contractual waivers have accepted parol evidence to determine whether the waiver was knowingly and voluntarily made, including affidavits and documents related to the negotiation. See, e.g. *In re Columbia Med. Ctr. of Lewisville Subsidiary, L.P.,* 273 S.W.3d 923, 927 (Tex. App. 2009); *Servicios Comerciales Lamosa, S.A. de C.V. v. De la Rosa,* 328 F.Supp.3d 598, 619–20 (N.D. Tex. 2018) ("In determining whether a jury-trial waiver was made knowingly, voluntarily, and intelligently, courts in the Fifth Circuit generally balance four factors: (1) whether both parties had an opportunity to negotiate the terms of the agreement, (2) whether the provision waiving jury trial was conspicuous, (3) the relative bargaining power of the parties, and (4) the business acumen or professional experience of the party opposing the waiver."); *Hydramar, Inc. v. Gen. Dynamics Corp.,* 1989 WL 159267, at *3 (E.D. Pa. Dec. 29, 1989). The Plaintiff asserts that "significant factual questions exist about the parties' relative bargaining power, the inconspicuousness of the clause, and the extent to which it was actually negotiated..." *Opposition,* p. 2.

¶5     Specifically, the Plaintiff asserts that the parties were not in an equal bargaining position: "the evidence will show that the resort was owned by several affluent gentlemen who were sophisticated businessmen with a single mother sole proprietor (Ms. Hensley) who was attempting to run a restaurant and has little business acumen. While she attempted to hire an attorney, he was off island and unable to review and consult with Plaintiff about the lease and John Coates, the Defendant's manager, informed Plaintiff she had to either sign the lease immediately or the lease would be withdrawn." *Opposition,* p. 8. In her affidavit, Ms. Hensley claims she "had absolutely no notice or knowledge that the lease had a waiver of jury trial in it...I really don't understand all the clauses, and I knew my review would make no difference as the lease was on a take-in or leave it basis...In fact, even the small changes I requested were denied." *Opposition,* Exhibit 2, p. 3.

¶6     TRRM, on the other hand, asserts that "Deep End, as a limited liability company and commercial tenant entering into a substantial five-year lease with an option to extend, is presumed

---

[2] The Court also finds the Defendant's characterization of the affidavit as parol evidence imprecise. The parol evidence rule prevents the trier of fact from considering extrinsic evidence offered to contradict or vary the terms of a final written agreement. *Armstrong Motors v. Lewis,* 1990 WL 10848581, at *1 (Terr. Ct. V.I. Nov. 19, 1990). "However, course of dealing, usages of trade, or course of performance may be introduced to explain or supplement the agreement even where the writing is a 'complete and exclusive' statement of the terms of the agreement." *Id.* at *2; *Bradley v. Washington, A. & G. Steam-Packet Co.,* 38 U.S. 89, 99 (1839) ("That in giving effect to a written contract, by applying it to its proper subject matter, extrinsic evidence may be admitted to prove the circumstances under which it was made; whenever, without the aid of such evidence, such application could not be made in the particular case.")

to be a sophisticated business entity capable of understanding the terms of its contractual agreements." *Memorandum*, p. 8. It also notes that at termination of the 2015 lease, the parties entered into an extension which was "heavily negotiated." *Memorandum*, p. 2. The extension does not contain the jury waiver, but it does include a clause which asserts that all other terms of the 2015 lease would remain in "full force and effect." *Memorandum*, p. 2.

## DISCUSSION

¶7    As both parties have noted, there are no Virgin Islands cases which directly address the issue of pre-litigation contractual jury waivers. Therefore, a *Banks* analysis is necessary. See *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011). The Court is to consider "three non-dispositive factors: (1) whether any Virgin Islands courts have previously adopted a particular rule; (2) the position taken by a majority of courts from other jurisdictions; and (3) most importantly, which approach represents the soundest rule for the Virgin Islands." *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013).

### A. Pre-Litigation Contractual Jury Waivers in the Virgin Islands

### 1. Have any Virgin Islands Courts adopted a particular rule with regard to pre-litigation contractual jury trial waivers?

¶8    This Court's research, as well as that of the parties, reveals that no Virgin Islands statute or case has previously determined whether contractual jury trial waivers should be upheld in the Territory. Therefore, the first *Banks* factor is met.

### 2. What is the position taken by the majority of courts in other jurisdictions?

¶9    "A majority of courts to address this issue have found no bar to the enforcement of pre-dispute jury-waiver provisions." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 778 (Tenn. Ct. App. 2010) (collecting cases). The *Poole* Court, like a majority of others within the United States, essentially prioritizes the right of parties to contract freely over the Seventh Amendment right to a jury trial, holding that courts should generally enforce agreements for which the parties have bargained. *Id.* at 780; *see also Malan Realty Invs., Inc. v. Harris*, 953 S.W.2d 624, 626 (Mo. 1997) (collecting cases). The United States Supreme Court has held that private litigants can waive their rights to a jury in civil cases. *Seaboard Lumber Co. v. United States*, 903 F.2d 1560, 1563 (Fed. Cir. 1990). Such a waiver must, however, be knowing and voluntary. *Id.* The Supreme Court has further held that because "the right of jury trial is fundamental, courts indulge every reasonable

presumption against waiver." *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393 (1937) (citations omitted).

¶10     The Seventh Amendment right to a jury trial in a civil matter has been extended to the United States Virgin Islands through the Revised Organic Act. *Antilles Sch., Inc. v. Lembach*, 64 V.I. 400, 433 (V.I. 2016), *Samuel v. United Corp.*, 64 V.I. 512, 521 (2016). "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." U.S. Const. Amend. VII; *see also* 5 V.I.C. § 321 ("The right of trial by jury as declared by the Seventh Amendment to the Constitution of the United States shall apply in civil actions in the [Superior Court] of the Virgin Islands, except as otherwise provided by law."); *Samuel v. United Corp.*, 64 V.I. at 522.

¶11     The Supreme Court of the United States, however, has also determined that the Seventh Amendment right to a jury trial in civil cases is not a "fundamental" Constitutional right. *Gonzalez-Oyarzun v. Caribbean City Builders, Inc.*, 798 F.3d 26, 29 (1st Cir. 2015) (collecting cases). The First Circuit Court of Appeals in *Gonzalez-Oyarzun* reversed a Puerto Rico District Court decision that attempted to extend the Seventh Amendment right to civil jury trial to the territory as a fundamental right incorporated through the Fourteenth Amendment. Notably, that interpretation, based heavily on *Bombolis*, may soon be subject to change. The Supreme Court of the United States, in a recent denial of certiorari, indicated that it may be moving toward "total incorporation" of the Bill of Rights: "In the years since *Bombolis*, this Court has 'shed any reluctance' about the idea that the Fourteenth Amendment 'incorporate[s]' against the States many of the liberties enshrined in the Bill of Rights." *Thomas v. Humboldt Cnty., California*, 146 S.Ct. 27, 27 (2025) *citing McDonald v. Chicago*, 561 U.S. 742 (2010). In its denial of certiorari, the *Thomas* Court thoroughly examined the history of civil jury trials in America, and noted that the right to a jury in civil matters was particularly cherished in the early days of the formation of the United States. "Surely, those who founded our Nation considered the right to trial by jury a fundamental part of their birthright." *Id. at* 27 (citation omitted).

¶12     The jurisdictions in which pre-litigation contractual jury waivers are not supported apply similar reasoning, based on state constitutions: "Our Constitution treats the historical right to a jury resolution of disputes that have been brought to a judicial forum as fundamental, providing that in 'a civil cause,' any waiver of the inviolate right to a jury determination must occur by the

consent of the parties to the cause *as provided by statute."* *Grafton Partners v. Superior Ct.*, 116 P.3d 479, 481 (2005) (citation omitted). While California allows the waiver of the right to jury trial, it does so only for litigation-specific situations, such as "failure to appear at trial, failure to demand jury trial within a specified period after the case is set for trial, failure to pay required fees in advance or during trial, oral consent in open court, or written consent filed with the clerk or the court." *Id.* It does not allow for pre-litigation waiver. *Id.* By contrast, despite the fact that the Tennessee Constitution has a similar provision, Tennessee Courts do recognize the validity of pre-litigation jury waivers in contracts. *Poole v. Union Planters Bank, N.A.,* 337 S.W.3d at 778.

¶13     In the instant matter, the defense argues that arbitration agreements, which are routinely upheld by Territorial courts, are analogous to contractual jury trial waivers. As the *Grafton* Court points out, however, pre-dispute arbitration agreements are authorized by federal statute. *Grafton Partners v. Superior Ct.,* 116 P.3d at 484. Other courts, however, have found the parallels between recognizing arbitration agreements and recognizing contractual jury waivers persuasive. The *Poole* Court found that "the enforcement of arbitration agreements, which is favored in Tennessee, involves waiver of an additional and arguably more consequential fundamental constitutional right: the right of access to the courts. It is not immediately apparent why public policy would prohibit pre-dispute contractual waiver of the right to trial by jury where the enforcement of pre-dispute agreements to arbitrate is favored. And other courts to consider the question have concluded that public policy certainly does not invalidate one and not the other." *Poole v. Union Planters Bank, N.A.,* 337 S.W.3d 771, 781 (Tenn. Ct. App. 2010) (citations omitted).

¶14     As the Defendant correctly asserts, "[o]f the 36 jurisdictions where the common law can be fully ascertained, not a single jurisdiction has held that contractual pre-litigation waivers of jury trials are invalid on grounds of public policy. There are only 5 jurisdictions where such a waiver is invalid and in each of these five jurisdictions, the waiver is prohibited by either the state's constitution or a state statute—not by common law." *Defendant's Banks Analysis*, p. 2. In Georgia, for example, waiver of the right to a jury is "'carefully controlled' by statute." *Bank S., N.A. v. Howard*, 444 S.E.2d 799, 800 (Ga. 1994); *see also In re Cty. of Orange*, 784 F.3d 520, 523 (9th Cir. 2015). At the end of the day, whether a right is considered "fundamental" or not, the United States Supreme Court has held that due process rights may be waived by contract, as long as that waiver is "'voluntarily, intelligently, and knowingly'" made. *Fuentes v. Shevin*, 407 U.S. 67, 94–

95 (1972), citing *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 187 (1972). Therefore, the second *Banks* factor weighs in favor of accepting contractual jury waivers.

### 3. Which approach is the soundest rule for the Virgin Islands?

¶15    The Virgin Islands Supreme Court has traditionally counted the third *Banks* factor as the most important. *Simon v. Joseph*, 59 V.I. 611, 623 (V.I. 2013). The Court must determine which approach represents the soundest rule for the Virgin Islands. *Id.* The Defendant argues that the jurisdictions which do not recognize pre-litigation contractual jury trial waivers (Arkansas, California, Georgia, North Carolina, and Oklahoma) do so because they have applicable statutes or Constitutional clauses that make the right, essentially, "involate." Defendant's Banks Analysis, p.6. The Virgin Islands Rules of Civil Procedure have a similar provision. "The right of trial by jury as declared by the Seventh Amendment to the United States Constitution and the Revised Organic Act – or as provided by a Virgin Islands or federal statute – is preserved to the parties inviolate." V.I. R. CIV. P. Rule 38(a). Even so, Virgin Islands courts have held that this right can be waived if, for example, proper procedure in asserting a jury demand is not followed. V.I. R. CIV. P. Rule 38(d); *Babij v. Cuffy*, 79 V.I. 1080, 1093 (V.I. 2025); *see also Todd v. Blake*, 2022 WL 17719698, at *2 (D.V.I. Dec. 15, 2022) (interpreting waiver in the context of the identical Federal Rule of Civil Procedure 38(d)).

¶16    "Unless public policy compels another result, the majority rule is generally presumed to be the soundest." *Roy v. Banco Popular de Puerto Rico*, 2025 VI 19, 5 ¶ 14 (V.I. 2025) *citing Matthew v. Herman*, 56 V.I. 674, 680 (V.I. 2012). In the instant matter, the Court agrees that the majority rule is the soundest. As previously noted, only five jurisdictions have held that pre-litigation contractual jury waivers are invalid based on the laws of those states. As more fully discussed below, Virgin Islands courts regularly uphold citizens' right to contract freely. Furthermore, the backlog of civil jury cases in the Territory is substantial. If parties fully and freely agree to waive resolution of their disputes by jury, this can only inure to the benefit of Virgin Islands courts and thereby to the citizens of the Virgin Islands. However, because the right to a jury trial is also a key freedom for Virgin Island citizens, especially small business owners, this Court finds that while pre-litigation contractual jury waivers may be permitted, they must absolutely be knowing and voluntary.

## B. Enforceability of the Jury Trial Waiver in this Matter

¶17    In *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174 (1972), the United States Supreme Court explored the requirements for waiver of a constitutional right, comparing waivers in criminal cases and noting that courts may examine the facts of such contracts to ensure that they are not contracts of adhesion, that the parties have relatively equal bargaining power, and that both parties are aware of the significance of the waiver provision. *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. at 186. "The real concern with every case decision has been the relative bargaining powers of the parties." *Malan Realty Invs., Inc. v. Harris,* 953 S.W.2d 624, 627 (Mo. 1997). It should be noted that not all courts take this position. As the Seventh Circuit Court of Appeals points out: "[e]ver since *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), enforced a forum-selection clause printed in tiny type on the back of a cruise-ship ticket, it has been hard to find decisions holding terms invalid on the ground that something is wrong with non-negotiable terms in form contracts." *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d 989, 992–93 (7th Cir. 2008). In *IFC,* the Seventh Circuit held that a pre-litigation jury waiver needs no additional inquiry if the contract itself is valid. The Court was not persuaded by the insistence of other jurisdictions on the "knowing and voluntary" analysis of such waivers. "(Such courts) begin from the proposition that only a knowing and intelligent waiver, with the usual formalities that "waiver" entails, may surrender the right to a jury trial. Yet if the parties' contract is silent on the issue, then Fed.R.Civ.P. 38 will govern. And Rule 38 says that omission of a jury demand from a complaint or answer forfeits any opportunity to have the case heard by a jury. Omissions may occur by accident or lack of foresight. If accidental forfeitures can blot out any right to a jury trial—for no one argues that Rule 38 is unconstitutional—then there is no federal rule that bench-trial agreements must be attended by extra negotiation or depend on evidence of voluntariness beyond what is required to make the rest of the contract legally effective." *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d at 993 (7th Cir. 2008). This is the essence of the Defendant's argument in the instant matter.

¶18    Other jurisdictions, however, look to a variety of factors in determining whether pre-litigation contractual jury clause waivers should be upheld, including "(1) the conspicuousness of the jury-waiver provision; (2) the parties' business acumen and experience; (3) the representation, or lack thereof, of counsel; (4) the negotiations had concerning the agreement and the waiver provision; (5) the relative bargaining power of the parties; (6) the nature of the contract; and (7)

the existence of fraud, overreaching, or unconscionability." *Poole v. Union Planters Bank, N.A.*, 337 S.W.3d at 783 (collecting cases). "To effectively waive a jury trial by contract, clear, unambiguous, unmistakable, and conspicuous language is required." *Malan Realty Invs., Inc. v. Harris*, 953 S.W.2d 624, 627 (Mo. 1997) (citation omitted); *see also Mall, Inc. v. Robbins*, 412 So.2d 1197, 1199 (Ala. 1982).

¶19     As noted in the American Law Review, the imbalance of power is rightfully a concern, but may in the end have to take a back seat to a valid contract: "Institutional parties who frequently contract with individuals generally favor nonjury trials, since the outcome of a jury trial is usually seen to be less certain than that of a trial before a judge, especially since the jury will presumably tend to be more sympathetic than a judge to the plight of the individual against the decidedly unpopular corporate party. Nonetheless, a deal is a deal and a contract is a contract, and therefore the vast majority of courts have held, at least in the abstract, that if the parties entered into a contract containing a jury trial waiver clause, such clause will be enforced as not being unreasonable." 42 A.L.R.5th 53 §2[a] (Originally published in 1996).

¶20     Therefore, the Court must balance the value of upholding the Constitutional right to jury trial with the right to contract, which is included in the Bill of Rights of the Revised Organic Act, which serves as the *de facto* Constitution of the United States Virgin Islands. Section 1561 of the Revised Organic Act provides that "[n]o law impairing the obligation of contracts shall be enacted." 48 U.S.C. § 1561. In the Virgin Islands, the underlying purpose of contract law is "to hold parties to their agreements so that they receive the benefit of their bargains." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (V.I. 2017). To that end, courts should, whenever possible, uphold the plain language of contracts. *Id.* at 625 (citations omitted). Importantly, neither party in the instant matter is arguing that the contract is for any reason void. In fact, the Plaintiff cannot make such an argument, as her case depends in part on enforcing what she believes to be the terms of the two lease agreements at issue. *Complaint*, p. 6, Count IV, alleging breach of contract; *Opposition* p.2. Nonetheless, the Plaintiff argues, regarding this single contractual provision, that "[t]he notion that Deep End was fully empowered to negotiate away such a fundamental right, is far from reasonable—particularly when real-world commercial pressures exist, and the Restaurant's viability depends on the Landlord's continued cooperation." *Opposition*, p. 9. The Defendant, however, asserts that "Deep End had the opportunity to review the lease before signing it. It even exercised its option to extend the lease and negotiated amendments to certain provisions,

demonstrating its ability to identify and renegotiate unfavorable terms. Significantly, Deep End did not seek to amend or remove the jury waiver provision during these negotiations." *Memorandum*, p. 8.

¶21 "The existence of an offer and acceptance are mutual expressions of assent, and consideration is evidence of the intent to be bound to the contract." *Agueda v. Marcano*, 79 V.I. 533, 545 (V.I. 2024) (citation omitted). The Plaintiff has provided the Court with few facts with which to make any determination regarding the circumstances surrounding contract negotiations. The *Opposition* essentially states that additional facts need to be ascertained through discovery. In her Affidavit, Hensley does not provide any information about which of the two (or three) leases she is referring to when she discusses inequity in the negotiations. She states: "The existing unchanged clauses from the prior lease were not subject to negotiation, but the changed clauses were, and Semaj Johnson would have reviewed those clauses. I certainly don't remember there being any discussions or negotiations as to what I now know was a waiver of jury trial, as I believe that must have been in the original lease I was assuming…This was back in 2012, I believe." *Opposition*, Ex. 2, p. 2. She goes on to state, "When that lease expired, I wanted to negotiate that STFC would put in electrical meters and other changes." *Id.* TRRM alleges that, in fact, the lease extension was actively negotiated and "included new or modified terms that favored Deep End." *Memorandum*, p. 2, p. 8. Neither party discusses the circumstances surrounding the negotiations or which specific terms in either lease were "bargained for."

¶22 In the absence of any additional facts, the Court is left with competing allegations. The Plaintiff asserts that the parties had unequal bargaining power, characterizes Ms. Hensley as an unsophisticated "single mother," and insists that Ms. Hensley was unrepresented during negotiations. The Defendant contends that Ms. Hensley is a sophisticated business owner who was represented by an attorney. The only thing not in dispute is the existence of the 2015 lease, attached to the Defendant's Motion as Exhibit A. In that document, the clause in question is the penultimate paragraph, to which Ms. Henley's initials appear directly adjacent. Her signature appears almost directly below the same paragraph. The jury waiver is in bold type, and it is clearly titled "Waiver of Jury Trial." Additionally, both parties acknowledge that there was negotiation regarding the lease extension, attached to the Defendant's *Motion* as Exhibit B. On that document, Ms. Hensley's signature appears directly below the clause which states: "Landlord and Tenant hereby covenant that all other terms and conditions contained in the Lease Agreement shall remain in full force and

effect except as expressly provided herein." The provisions in both documents are clear and unambiguous. Both parties agree that at least some negotiation occurred, and neither party denies that there was an offer, acceptance, and consideration. As such, the Court cannot find that Ms. Hensley was unaware that she was agreeing to waive a jury trial in any future proceedings.

## CONCLUSION

¶23    The rule in a majority of U.S. jurisdictions which allows pre-litigation contractual jury waivers is the soundest rule for the U.S. Virgin Islands. In this matter, the waiver provision was conspicuous, both parties possessed significant business acumen and experience, both parties were represented by counsel, the parties had the ability to negotiate regarding the waiver provision, both parties had significant bargaining power, the parties voluntarily entered into five-year term commercial lease agreement which was later extended, and there is no evidence of fraud, overreaching, or unconscionability. Accordingly, the premises having been considered, and the Court otherwise being fully advised, it is hereby

**ORDERED** that the Defendant's *Motion to Strike Jury Demand* is **GRANTED**; and it is further

**ORDERED** that the Plaintiff's *Motion to File Sur Response* is **DENIED**; and it is further

**ORDERED** that the parties must meet and confer pursuant to V.I. R. CIV. P. 26(f) and file a joint proposed Amended Scheduling Order **on or before June 18, 2026**; and it is further

**ORDERED** that a copy of this Order be served upon Lee J. Rohn, Esq., and Andrew C. Simpson, Esq.

**DONE** and **SO ORDERED** this 18th day of May, 2026.

ERNEST E. MORRIS, JR.
Superior Court Judge

**A T T E S T:**
**TAMARA CHARLES**
Clerk of the Court

By:
Court Clerk II

Date: 5/19/2026